**Mandel DYMM, Plaintiff,**

v.

**Gerald CAHILL, Raymond Bogert, Stanley Schwartz, James P. Casey, KT Building Associates, Inc., Ernest Hammer and George Devins, Defendants.**

**No. 89 Civ. 3953 (MBM).**

United States District Court, S.D. New York.

Feb. 13, 1990.

Lewis S. Sandler, James J. Eccleston, Beigel & Sandler, Ltd., New York City, for plaintiff.

Irwin M. Echtman, Easton & Echtman, P.C., New York City, for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

This case arises out of plaintiff's investment in two limited partnership tax shelters—New Castle and Decker Malls—on the advice of his accountant, who allegedly misrepresented material facts about the partnerships and conspired with the insiders of the New Castle partnership to defraud plaintiff and other investors through a complex scheme involving forged promissory notes, excessive prices and fees to insiders. Plaintiff has sued the accountant, George Devins, and the alleged insiders of the New Castle partnership including the managing agent, McCorhill Publishing, Inc., the general partner, KT Associates, and the officers and principals of these two corporations. Plaintiff brings five claims against all defendants in connection with the New Castle partnership based on § 10(b) of the Securities and Exchange Act and Rule 10b–5 promulgated thereunder, § 17(a) of the Securities Act of 1933, RICO, and common law claims of fraud and breach of fiduciary duty. He also brings four claims solely against Devins in connection with the Decker Malls partnership based on § 10(b) and Rule 10b–5, § 17 and common law claims of fraud and negligence.

Two of the defendants, Devins and Bogert, move to dismiss the complaint for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b), and for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, defendants' motion is granted as to plaintiff's claims under § 17 of the Securities Act of 1933, and denied as to all other claims.

### I.

Plaintiff Mandel Dymm is a citizen of Florida who allegedly is not sophisticated

or knowledgeable about financial matters. In the Spring of 1984, plaintiff hired defendant Devins as an accountant for plaintiff's graphics business, and in December of that year began looking to Devins for advice on tax matters and investments. At that time, Devins met with plaintiff and advised him to invest in the New Castle Limited Partnership "because it provided tax benefits with the opportunity for profits." (Compl. ¶ 34) Plaintiff bought interests in New Castle both on December 31, 1984, when he bought a one-half unit interest for $37,500, and on April 16, 1985, when he bought another one-half interest at the same price. Allegedly at the direction of Devins, plaintiff on December 31, 1984 made an initial payment of $1,875 on his first one-half unit investment in New Castle with a check made out to New Castle. From then on, allegedly at Devins' direction, plaintiff paid off his first one-half unit investment by writing checks to "Citytrust" in varying amounts at three-month intervals over the next three years, for a total of $41,160.67. Similarly, plaintiff made an initial payment to New Castle for his second one-half unit interest in the partnership, and for the next three years wrote checks to Ingersoll–Rand Financial Corporation in varying amounts, for a total of $80,439.93.

Plaintiff alleges that starting in December, 1984, defendant Gerald Cahill, the chairman, principal and shareholder of McCorhill Publishing ("McCorhill"), defendant Raymond Bogert, vice-president of KT Building Associates, Inc. ("KT") and a principal of McCorhill, and other defendants who were officers and associates of KT and McCorhill, executed a complex scheme to defraud investors. This scheme involved the purchase and sale of property in New Castle, New York called the Kraus–Thompson Building. McCorhill was the managing agent of the New Castle partnership; KT was the partnership's sole general partner.

McCorhill bought both the building and part of the publishing businesses of Kraus–Thomson Organization, Ltd., and then allegedly sold only the property to New Castle at an inflated price and kept the rights to the businesses. Plaintiff alleges that New Castle structured the transaction using features including a wraparound mortgage and excessive fees to KT and McCorhill so as to divert funds to defendants without the knowledge of investors. Further, plaintiff alleges that New Castle, by its general partner KT, forged the signatures of investors on promissory notes, falsely notarized these notes and pledged them as collateral for loans from two lending institutions, Citytrust and Ingersoll–Rand. Later, New Castle defaulted on the loans and declared bankruptcy, and investors received demands on the notes from the banks.

Plaintiff asserts that defendants authorized Devins to make misrepresentations to plaintiff regarding the New Castle investment, including, *inter alia*, that the building owned by New Castle was completely rented or soon would be, that the building was about to be sold at a high profit, that each limited partner would receive substantial tax-free distributions, and that the limited partners would be liable only for the amount they invested. Neither Devins nor the other defendants disclosed certain facts to plaintiff, such as, *inter alia*, that the borrowed money had been secured by forged promissory notes, and that KT and another company had not paid the capital contribution required by the partnership agreement.

Plaintiff also sues Devins with regard to another limited partnership investment Devins advised plaintiff to purchase in September, 1985. Plaintiff alleges that Devins told him that he would soon be receiving profits from the New Castle investment, and that he should immediately reinvest these profits in Decker Malls by becoming a limited partner in that partnership. Plaintiff in fact did not wait for a return on his New Castle investment before committing himself to buy an interest in Decker Malls, allegedly relying on Devins' statement that he would not have to pay for his Decker Malls interest until he received a return on his New Castle investment. On September 30, 1985, plaintiff purchased a one-unit investment in Decker Malls for $75,000, exclusive of interest, and made

payments over the course of the next two years totalling $99,191.99. These payments did not comport with a capital contribution schedule listed in documents plaintiff never received.

Plaintiff sues the New Castle defendants, including Devins, based on § 10(b) of the Securities and Exchange Act of 1934, § 17(a) of the Securities Act of 1933, RICO, and common law fraud and breach of fiduciary duty. Plaintiff also sues Devins for his misrepresentations regarding Decker Malls based on § 10(b), § 17(a), and common law fraud and negligence. Only defendants Bogert and Devins have moved to dismiss the complaint.

## II.

In his first claim, plaintiff charges that all defendants conspired to violate and aided and abetted each other in violating § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 under that act, 17 C.F.R. § 240.10b–5, through their misrepresentations in connection with the purchase and sale of securities in the New Castle partnership. In his seventh claim, plaintiff alleges that Devins violated § 10(b) and Rule 10b–5 by making misrepresentations in connection with the sale of securities in Decker Malls. Defendants Bogert and Devins, in their motion to dismiss, assert that plaintiff fails to plead fraud with sufficient particularity under Fed.R.Civ.P. 9(b), fails to plead scienter, and cannot bring this claim because it is barred by the statute of limitations. Because plaintiff has pleaded fraud particularly enough, and has pleaded scienter adequately to state a § 10(b) claim against both Devins and Bogert, defendant's motion to dismiss the first and seventh claims on those bases is denied. Further, because plaintiff has sufficiently pleaded that the statute of limitations has been tolled by fraudulent concealment, plaintiff's § 10(b) claims survive a motion to dismiss based on the statute of limitations.

### A. *Particularity*

Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances con-

stituting fraud or mistake shall be stated with particularity." Rule 9(b)'s strict requirements are tempered, however, by the general pleading rule set forth in Fed.R. Civ.P. 8(a) that a complaint consist of "short and plain statement[s]" of claims for relief. *See DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242 (2d Cir.1987). Section 10(b) claims, which are based upon fraudulent acts, must satisfy the pleading requirements of Fed.R. Civ.P. 9(b). *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). In order to plead fraud with particularity, "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Such allegations cannot be conclusory, but must be supported by assertions of fact. *Luce*, 802 F.2d at 54. On a motion to dismiss, a court must read the complaint generously and draw all inferences in favor of the pleader. *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985).

█ In the case at bar, plaintiff asserts his § 10(b) claim against all defendants as a group for taking part in the New Castle scheme, including the forgery of notes, and for making misrepresentations through Devins, whom plaintiff alleges was their agent. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio*, 822 F.2d at 1247. Plaintiff need not specify the role of each particular defendant in an alleged securities fraud if the misrepresentations were embodied in an offering memorandum, and if the defendants are "insiders or affiliates participating in the offer of the securities in question." *Luce*, 802 F.2d at 55.

Dymm, however, does not allege that the misrepresentations were conveyed through an offering memorandum; in fact, he asserts that "[n]o offering memorandum for

New Castle was provided to plaintiff for his review." (Compl. ¶ 41) Therefore, he must provide each defendant with sufficient notice of that defendant's part in the fraud by alleging, at a minimum:

> "(1) the nature of each individual defendant's participation in the fraud, including the facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor; and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded."

*The Limited, Inc. v. McCrory Corp.*, 645 F.Supp. 1038, 1043 (S.D.N.Y.1986).

The complaint alleges that Bogert was Vice President of KT Building Associates, Inc., the general partner of the New Castle partnership, and a principal of McCorhill Publishing, the managing agent of the partnership. (Compl. ¶ 6(B)) The complaint alleges also that Bogert and other defendants were controlling persons of KT Building and McCorhill within the meaning of § 20(a) of the Exchange Act and thus liable for the acts of KT Building and McCorhill. (Compl. ¶ 8) In paragraphs 15 through 43, plaintiff sets forth in detail the nuts and bolts of the New Castle fraud, first by detailing the real estate transaction upon which the partnership allegedly was based, and then by describing the various misrepresentations and omissions which induced plaintiff to buy and pay for interests in the partnership. Most of these allegations are directed toward actions of "defendants" or "New Castle" or Devins, and not toward Bogert in particular, with the exception of paragraphs 40(e) and 42(a) and (d), which accuse the partnership of failing to disclose that "the forged indemnification agreements would be falsely executed by Bogert or others at the direction of the defendants" (Compl. ¶ 40(e)), and allege scienter by claiming that defendants knew the statements made about New Castle were false because "defendants Cahill, Bogert, Schwartz, Casey and Hammer had agreed in or about December, 1984 to secure the forged notes" (Compl. ¶ 42(a)), and

because "Bogert and Hammer notarized certain of the forged notes." (Compl. ¶ 42(d))

■ The allegations in paragraph 40 regarding the failure of Bogert and other defendants to disclose material facts to plaintiff, along with preceding informational paragraphs about Bogert's role in the partnership, are sufficient to satisfy Rule 9(b), as they assert the nature of Bogert's participation in the fraud by alleging his insider status and his position as an officer and controlling person in the general partner of the New Castle partnership and then describe the failure of the insiders to disclose material information to plaintiff. The complaint sufficiently shows also that Bogert had a duty toward plaintiff to disclose material information regarding the New Castle partnership when it alleges his position as an officer and controlling person in the general partner of the partnership and his status as an insider based upon that position. Therefore, plaintiff's first claim against Bogert survives the motion to dismiss for failure to plead fraud with particularity.

■ Paragraphs 38 and 39, which allege that defendants made misrepresentations to plaintiff through Devins, also allege fraud with sufficient particularity, as they specify in great detail the allegedly fraudulent or misleading statements, describe how the statements were fraudulent, and identify who made the statements. *See Cosmas*, 886 F.2d at 11. The first claim against Devins, therefore, survives defendants' motion to dismiss for failure to plead fraud with particularity.

■ In his seventh claim, plaintiff alleges also that Devins violated § 10(b) and Rule 10b–5 by making fraudulent representations about the Decker Malls partnership. In paragraphs 52 through 65 of the complaint, plaintiff sets forth specific facts regarding Devins' advice to invest in Decker Malls, including the time of Devins' representations, the content of these representations and the reasons these statements were untrue. Paragraph 54 recites the specific misrepresentations—namely, that

Devins had researched the investment adequately, that plaintiff would not have to pay for the investment until he received a return from his New Castle investment, and that Decker Malls "was secure, was potentially profitable and would provide substantial tax benefits." Paragraph 55 then alleges that exactly the opposite was true with respect to every representation described in paragraph 54.

Concededly, some of these allegations of fraud illustrate only that Devins' predictions were not correct forecasts, and do not show how the representations were fraudulent at the time they were made. For example, plaintiff claims that Devins' representation that plaintiff would not have to pay for his Decker Malls investment until he received a return from New Castle was untrue because, as it turned out, "plaintiff would have to pay for his investment in Decker Malls prior to receiving a return of all of his investment from New Castle." (Compl. ¶ 55(e)) Nevertheless, plaintiff alleges enough particulars as to how the statements described in paragraphs 52 through 65 were fraudulent and specifies the speaker, time and content of the representations sufficiently to satisfy the requirements of Fed.R.Civ.P. 9(b).

B. *Scienter*

■ Defendants argue also that plaintiff fails to plead scienter in his § 10(b) and Rule 10b–5 claims. To state a § 10(b) claim with the requisite particularity, plaintiff must plead scienter.[1] *Cosmas*, 886 F.2d at 12–13. Thus, a complaint must allege material misstatements or omissions indicating an intent to deceive or defraud in connection with the purchase or sale of a security. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Luce*, 802 F.2d at 55. Although Rule 9(b) "allows 'condition of mind' to be averred generally, plaintiffs must at least present those circumstances that provide a

minimal factual basis for the allegations of scienter." *Eickhorst v. Am. Completion and Development*, 706 F.Supp. 1087, 1091 (S.D.N.Y.1989). Plaintiff must plead facts that support a "strong inference" that defendants possessed the requisite fraudulent intent. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds*, *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (*en banc*). *See Cosmas*, 886 F.2d at 12–13; *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir.1987); *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987). One way of supporting an inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity to do so. *Beck*, 820 F.2d at 50.

■ The complaint sufficiently alleges Bogert's scienter as to the fraudulent note scheme and as to failure to disclose material information to plaintiff and other investors when it avers in paragraph 42 that Bogert secured and notarized forged notes which were shown to banks to secure loans. This reveals that Bogert knew of and participated in the scheme to defraud investors, and raises at least an inference of scienter. "Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant ... though the strength of the circumstantial allegations must be correspondingly greater." *Beck*, 820 F.2d at 50 (cites omitted).

Although plaintiff does not allege facts directly revealing knowledge by Bogert and other defendants with regard to the affirmative misrepresentations allegedly made for them through their agent Devins, plaintiff buttresses his conclusory allegations with facts showing a motive for committing fraud and a clear opportunity for doing so, and thus alleges scienter sufficiently as to the other defendants' part in

---

1. Scienter also is an element of § 10(b) and common law fraud, and thus must be alleged to state a claim and survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See Luce*, 802 F.2d at 55. The Court of Appeals recently has addressed the scienter requirement under a Rule 9(b) analysis. *Cosmas*, 886 F.2d at 12–13. It is important to note, however, that when a complaint is dismissed for failure to allege scienter adequately, the result is the same whether such a dismissal is based upon Rule 9(b) or Rule 12(b)(6).

Devins' misrepresentations. *See Beck*, 820 F.2d at 50. In paragraph 37, plaintiff alleges that "[d]efendants authorized Devins, as their agent, to sell interests in New Castle to the public. Defendants knew that Devins was selling interests in New Castle to investors, such as plaintiff, and directed Devins to make the misrepresentations and omissions, as set forth below, to such investors." In paragraph 38, plaintiff introduces the various misrepresentations Devins made to him about New Castle with the statement that "[i]n both December, 1984 and April, 1985, Devins, with the full knowledge and approval of the other defendants and as the agent of the other defendants and at their direction, represented to plaintiff the following with respect to New Castle. . . ."

Because plaintiff bases his § 10(b) claim on misrepresentations communicated by a single person, as opposed to misrepresentations contained in an offering memorandum, Bogert's insider status does not provide a basis for inferring a connection with these misrepresentations. Nonetheless, plaintiff sufficiently supports an inference of Bogert's scienter with facts showing Devins' connection with the New Castle insiders, including Bogert. In paragraph 40(j), plaintiff alleges that "Devins was to receive a substantial commission on plaintiff's purchases of interests in New Castle, and that, in the absence of a commission, Devins would not have recommended the investment to plaintiff." In paragraph 42(j), plaintiff alleges that "Devins was in frequent communication with Cahill," and in paragraph 42(k), plaintiff alleges that Devins later admitted to knowing that the notes were forged. These connections between Devins and the New Castle insiders, including Bogert, provided Bogert and the other defendants with a clear opportunity to commit fraud by using Devins as their medium for misrepresentations. The motive for endorsing such misrepresentations—finding victims for an already fraudulent investment scheme—is supported by numerous fact allegations about the structure of the New Castle transactions. For example, plaintiff alleges that McCorhill, the company in which Bogert was a princi-

pal, was to receive a consulting fee of $430,000 from the capital contributions to New Castle, and that KT, of which Bogert was vice-president, was to receive a fee of $80,000 from the capital contributions. (Compl. ¶ 27(b), 27(c))

Plaintiff's § 10(b) and Rule 10b–5 claim against Devins with regard to the New Castle scheme also survives that defendant's motion to dismiss on the basis of failure to plead scienter. Devins argues that plaintiff provides no factual basis for inferring that Devins knew that the representations alleged in paragraph 38 were false or that he had the requisite fraudulent intent. Devins argues that while plaintiff asserts that the representations made by Devins were false and "known by defendants to be false when made," (Compl. ¶ 40) he does not plead any nonconclusory facts showing or even implying that Devins knew or should have known of the alleged fraudulent scheme.

Devins, however, ignores the Court of Appeals' mandate that "on motions to dismiss, complaints should be read generously, and all inferences should be drawn in favor of the pleader." *Cosmas*, 886 F.2d at 12, *citing Yoder*, 751 F.2d at 562. Plaintiff alleges in paragraph 42(k) that "Devins recently admitted to plaintiff that he knew of the false notarization of the purported signatures of plaintiff on the notes, but concealed this from plaintiff until June, 1989." Such an allegation, although admittedly self-serving, asserts the specific fact that Devins knew about at least one aspect of the fraudulent scheme being perpetrated by the other defendants. This knowledge, in turn, gives rise to a strong inference that Devins knew his representations to plaintiff about the New Castle partnership were false, and thus that he possessed the requisite fraudulent intent. *See Beck*, 820 F.2d at 50. That inference means there has been a sufficient pleading of scienter to survive a motion to dismiss; specific facts have been pleaded from which knowledge may be inferred. Thus, the first claim against Devins survives defendants' motion to dismiss on the basis of failure to plead scienter.

The seventh claim against Devins alleging a § 10(b) violation as to the Decker Malls investment also pleads scienter sufficiently and thus satisfies Fed.R.Civ.P. 9(b). Although the complaint does not allege specific facts revealing Devins' knowledge at the time his statements were made that they were fraudulent, specificity is not required in allegations of scienter. *See Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985). Rather, plaintiff need only allege facts supporting a strong inference of intent. *Beck*, 820 F.2d at 50. In paragraph 54(c), (d) and (e) and paragraph 55(b), (c), (d) and (e), plaintiff alleges that Devins knew plaintiff would not be receiving profits from the New Castle partnership, but advised him that he would be receiving such profits soon, and advised him to reinvest these profits in Decker Malls. This allegation supports plaintiff's claim of fraudulent concealment, discussed below, but does not provide specific facts which indicate an intent to defraud in connection with the purchase of Decker Malls securities. Nevertheless, in paragraphs 54(a) and (f) and 55(a) and (f), plaintiff alleges that while Devins stated that he "was fully familiar" with the investments in Decker Malls and had "independently reviewed" offering materials and decided that it was a good investment, he in fact had not "completely reviewed" the offering materials, was not "fully familiar" with the investment and knew that it was not a good investment. This allegation supports more than just an inference of intent to defraud; it specifically alleges the manner in which Devins lied to plaintiff. Such a fact also would support an inference that Devins knew his statements about the advisability of an investment in Decker Malls were false, because he knew he had no basis for these statements. Fraud "includes the pretense of knowledge where knowledge there is none." *Ultramares Corp. v. Touche, Niven & Co.*, 255 N.Y. 170, 179, 174 N.E. 441 (1931), *quoted in DiRose v. PK Management Corp.*, 691 F.2d 628, 632 (2d Cir.1982). Therefore, defendant's motion to dismiss plaintiff's seventh claim against Devins is denied.

## C. *Statute of Limitations*

Defendants allege that plaintiff's first and seventh claims under § 10(b) are barred by the statute of limitations and thus must be dismissed. Plaintiff argues that defendants' fraudulent concealment, which plaintiff alleged in his complaint (Compl. ¶¶ 69–76), tolled the statute of limitations on these claims until plaintiff discovered the fraud perpetrated against him through the forgery of the notes and Devins' misrepresentations. Because plaintiff has stated in his complaint a valid rebuttal to the statute of limitations defense, defendants' motion to dismiss the § 10(b) claims on the basis of the statute of limitations is denied. Plaintiff still maintains the burden of proving fraudulent concealment, *see Donahue v. Pendleton Woolen Mills, Inc.*, 633 F.Supp. 1423, 1443 (S.D.N.Y.1986), and if he fails to do so at the trial stage, then his § 10(b) claims may be time-barred depending on when the fact-finder determines that the statute began to run.

Section 10(b) and Rule 10b–5 do not specify an applicable statute of limitations. A federal court must look to the statute of limitations of the forum state, including any borrowing statute, to determine the timeliness of a claim. *See, e.g., Ceres Partners v. GEL Associates*, 714 F.Supp. 679, 681 (S.D.N.Y.1989). New York's borrowing statute, CPLR § 202, applies when plaintiff is a non-resident of New York and the cause of action accrued outside New York. That borrowing statute states:

An action upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

A cause of action for fraud under § 10(b) arises where its economic impact is felt, which ordinarily is the plaintiff's residence. *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977). Here, plaintiff apparently is a

resident of Florida;[2] thus, the cause of action for his § 10(b) claim arose outside New York State and the borrowing statute presents a choice between the shorter of the New York or Florida statute of limitations. The Florida statute of limitations governing § 10(b) claims is the two-year period applicable to Florida's blue sky laws, Fl.Stat. § 95.11(4)(e). *Byrne v. Gulfstream First Bank & Trust Co.*, 528 F.Supp. 692 (S.D. Fla.1981), *aff'd*, 720 F.2d 686 (11th Cir.1983), *reh'g denied*, 723 F.2d 920. *See Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1465 (S.D.N.Y.1986). The applicable New York statute, the one prescribed for fraud, *see Armstrong v. McAlpin*, 699 F.2d 79, 87 (2d Cir.1983), allows a plaintiff to sue within six years from the time the cause of action accrued, or within two years from the time the wrongdoing was discovered or with reasonable diligence should have been. CPLR § 203(f) and CPLR § 213. Because the Florida statute is either the same or shorter, the two year statute applies.

■ Although state law controls the limitations period, the date the statute begins to run is determined by federal common law. *Arneil*, 550 F.2d at 780; *Moviecolor Limited v. Eastman Kodak Co.*, 288 F.2d 80, 83 (2d Cir.1961), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Federal common law dictates that the statute of limitations begins to run "when the plaintiff has actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978).

Defendants here argue that plaintiff should have known of the New Castle fraud by the time he made his first payment for his first unit investment, because if he exercised reasonable diligence he would have demanded to see the offering memorandum at that time. Further, defendants argue that at the very latest, plaintiff should have known of the fraud by

July 19, 1985—the date when plaintiff made his first payment to Ingersoll–Rand on a promissory note that allegedly was forged with his signature. "If his investment, made in installments totalling over $125,000 was made, as the complaint alleges, in installments by checks written to three entities, New Castle, Cititrust and Ingersoll–Rand, then by the exercise of reasonable diligence he should have inquired and investigated the documentary basis for his obligations to those entities." (Def. Br. at 33) With regard to the Decker Malls fraud, defendants argue that the statute began to run when plaintiff wrote his first check to Decker Malls on August 28, 1986, because at that date he had not yet received any return on his investment in New Castle, contrary to Devins' assurances, and thus should have exercised reasonable diligence in uncovering Devins' misrepresentation.

Plaintiff argues that defendants were in a fiduciary relationship with plaintiff and concealed the fraud from him. Therefore, under the doctrine of fraudulent concealment, the statute of limitations was tolled until he found out about the fraud through his attorneys "shortly before the filing of this complaint." (Compl. ¶ 69)

■ Fraudulent concealment must be pleaded with particularity, and plaintiffs must make "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made." *Moviecolor, Ltd.*, 288 F.2d at 88, *quoting Stearns v. Page*, 7 How. 819, 829, 12 L.Ed. 928 (1849). *See Klein v. Spear, Leeds & Kellogg*, 306 F.Supp. 743, 749 (S.D.N.Y.1969). To invoke the doctrine of fraudulent concealment, plaintiff must plead and prove: (1) the wrongful concealment by the defendant of its actions, (2) the failure by plaintiff to discover the operative facts underlying the

---

**2.** In his complaint, plaintiff asserts only that he is a citizen of Florida (¶ 5), but does not allege that he is a resident of Florida.

**1256**

action within the limitations period, and (3) plaintiff's due diligence in trying to discover the facts. *Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir.1984), *cert. denied*, 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985). *See Donahue*, 633 F.Supp. at 1443.

■■■■■ Here, because plaintiff has alleged sufficiently that Bogert and Devins owed him fiduciary duties,[3] or at least a duty to disclose material information, plaintiff need not plead facts showing active concealment by defendants, but rather, "he need only show that he remained in ignorance of the fraud of his fiduciaries without any fault or want of due diligence or care on his part." *Klein*, 306 F.Supp. at 749. As this court explained in *Zola v. Gordon*, 685 F.Supp. 354 (S.D.N.Y.1988),

"Even though the equitable tolling principle is a federal right, it is appropriate to look to state law to determine what constitutes fraudulent concealment under these circumstances.... In New York, when the parties are engaged in a fiduciary relationship, the complaining party can claim the benefit of the fraudulent concealment doctrine even absent an affirmative misrepresentation by the party under the fiduciary duty. In such a relationship, fraudulent concealment occurs if the party under the fiduciary duty fails to meet its 'obligation to inform [the other party] of facts underlying the claim.'"

*Zola*, 685 F.Supp. at 364, *quoting Jordan v. Ford Motor Co.*, 73 A.D.2d 422, 424, 426 N.Y.S.2d 359, 360–61 (Fourth Dep't 1980). The court in *Zola*, however, emphasized that in cases "involving fiduciary relationships, tolling ceases to work to a plaintiff's benefit when the plaintiff possesses sufficient facts that he must engage in some inquiry, and he fails to live up to this obligation. The plaintiffs bear the burden

of demonstrating that they exercised due diligence and reasonable care." *Zola*, 685 F.Supp. at 365.

In his complaint, plaintiff asserts that he could not have discovered the fraud with reasonable diligence until shortly before he filed the claim because he relied upon Devins, who concealed the fraud "by assuring plaintiff that the investments in Decker Malls and New Castle were going well and that profits would soon be received," (Compl. ¶ 70) and by representing to plaintiff that "a sale or lease of the New Castle property was imminent and that substantial profit would be soon realized by the investors." (Compl. ¶ 71) Plaintiff alleges also that defendants failed to provide him with timely information or investor reports about New Castle or Decker Malls (Compl. ¶¶ 72–73), and that they "actively concealed material information relevant to discovery of the true facts of plaintiff's investments in New Castle by concealing the notes forged in plaintiff's name, as well as the other forged documents, from plaintiff." (Compl. ¶ 74) Finally, as required by *Moviecolor*, plaintiff alleges in sufficient detail how he eventually discovered the fraud:

"Plaintiff was unaware of any of the true facts as described above and could not have reasonably discovered such facts until, shortly before the filing of this complaint when plaintiff's attorneys, Beigel & Sandler, Ltd., first informed plaintiff that it had obtained a copy of the notes held by Ingersoll–Rand and Citytrust and that they were forged; and plaintiff inspected the notes in his name, which were presented to him for the first time by Beigel & Sandler, Ltd. and discovered that the notes were forged." (Compl. ¶ 69)

Although plaintiff does not specifically allege actions which could be regarded as

---

**3.** Plaintiff has alleged facts sufficient to support a claim that Bogert and Devins owed fiduciary duties to him, as discussed below with regard to plaintiff's breach of fiduciary duty claims. Further, even if Devins was not in a fiduciary relationship with plaintiff, plaintiff has alleged enough facts to support an inference that Devins had a duty of disclosure under New York law. A duty to disclose arises either where the

parties are in a fiduciary relationship, or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Grumman Allied Ind. Inc. v. Rohr Ind., Inc.*, 748 F.2d 729, 738–39 (2d Cir.1984), *quoting Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984).

"due diligence" in ferreting out the truth, there also is no particular moment, discernable from the complaint, when it should have become so obvious to plaintiff that a fraud was taking place that he had a duty to uncover or deduce it notwithstanding defendants' fiduciary duty to disclose material information to him. This is especially true with regard to the forgery of promissory notes by insiders of the New Castle partnership. Defendants find it astonishing that plaintiff was not alerted to a fraud when he wrote his investment checks out first to "New Castle," then to "Citytrust" and then to "Ingersoll–Rand." Yet, in such a situation, it would not have been unreasonable for plaintiff to assume there was some other reason for the change in entities to which the checks were made out—such as an assignment by New Castle to these banks—besides the outright forgery of his name on promissory notes.

The description of plaintiff's discovery of the fraud, (Compl. ¶ 69), and the other allegations of fraudulent concealment in paragraphs 69 and 70, satisfy the particularity requirement for pleading fraudulent concealment. No doubt, plaintiff could have been more descriptive by transcribing Devins' specific statements covering up the fraud, but such specificity seems superfluous considering that plaintiff need not even allege active concealment if defendants were fiduciaries who owed him a duty of disclosure. As mentioned above, on a motion to dismiss, a court must read the complaint generously. *Yoder*, 751 F.2d at 562. This mandate seems especially necessary when too harsh a reading of the complaint would result in the early imposition of a time-bar on plaintiff's claims. Plaintiff therefore is granted the opportunity to prove fraudulent concealment at a later stage in the proceedings. Regardless of plaintiff's fraudulent concealment defense, the issue of when plaintiff's § 10(b) claim accrued under federal common law—that is, when plaintiff should have known of the fraud through the exercise of reasonable diligence—also is an issue of fact to be determined on the basis of evidence presented at a later stage in this case. If it is determined that these claims accrued

more than two years before the complaint was filed, then plaintiff's claims will be time-barred.

### III.

Plaintiff asserts common law fraud claims against all defendants for the New Castle partnership scheme and against Devins for fraud with regard to Decker Malls. Defendants have moved to dismiss these claims for failure to plead fraud with particularity under Fed.R.Civ.P. 9(b). Because plaintiff bases his common law fraud claims upon the same circumstances as his § 10(b) fraud claim, this argument need not be addressed again. As discussed above with regard to plaintiff's § 10(b) claims, plaintiff has satisfied Rule 9(b)'s particularity requirements. Therefore, defendants' motion to dismiss plaintiff's third and ninth claims for failure to plead fraud with particularity is denied.

### IV.

Plaintiff, in his second claim, alleges that by perpetrating the New Castle scheme, defendants violated § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). In his eighth claim, plaintiff alleges that Devins violated § 17(a) when he fraudulently sold plaintiff limited partnership interests in Decker Malls. Because there is no private right of action under § 17(a), these claims are dismissed.

Section 17(a) provides that it is unlawful for any person offering or selling securities through interstate commerce to use any fraudulent devices or schemes, or to obtain money or property by means of fraudulent statements, or to engage in any transaction, practice or course of business which "operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a). The Supreme Court has not decided whether there is a private right of action under § 17(a). *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979).

The Second Circuit has started to back away from its decision in *Kirshner v. United States*, 603 F.2d 234 (2d Cir.1978), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979), in which it recognized a private right of action under § 17 based solely upon the assumption that there is "little practical point in denying the existence of an action under § 17 once it is established that an aggrieved buyer has a private action under § 10(b) of the 1934 Act." *Kirshner*, 603 F.2d at 241. In 1985, Judge Friendly, writing for the Court in *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir. 1985), noted that *Kirshner*'s holding "may be open to re-examination." *See also Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.*, 801 F.2d 13, 25 (2d Cir. 1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Zerman v. Ball*, 735 F.2d 15, 23 (2d Cir.1984), in which the Court declined to express a view as to whether such a private right exists.

Several courts in this district have refused to recognize a private right of action arising from § 17 of the 1933 Act. *See Stevens v. Equidyne Extractive Industries 1980*, 694 F.Supp. 1057, 1066–67 (S.D.N.Y. 1988); *Anderson v. Lowrey*, 667 F.Supp. 105, 110 (S.D.N.Y.1987); *The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 395–97 (S.D.N.Y.1988); *Dubin v. The E.F. Hutton Group, Inc.*, 695 F.Supp. 138, 148 (S.D.N. Y.1988); *Ackerman v. Clinical Data, Inc.*, [1985–86 Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,207, 1985 WL 1884 (S.D.N.Y.1985). Upon a reexamination of *Kirshner* in light of recent Supreme Court decisions, I am satisfied that *Kirshner* is no longer controlling authority, and that there is no private right of action under § 17(a).

In *Aaron v. SEC*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980), the Supreme Court determined that while actions under § 10(b) of the 1934 Act require proof of scienter, actions under §§ 17(a)(2) and 17(a)(3) of the 1933 Act do not require such proof. These differences undercut the only basis for *Kirshner*'s recognition of a private right under § 17(a)—the assumption that the two statutes are identical in scope. In fact, the plain language of the two statutes shows that their scope is not identical: § 10(b) is limited to actions alleging fraud in connection with the "purchase and sale" of securities; § 17(a) applies to actions alleging fraud in connection with the "offer" of securities. *See Ackerman*, [1985–86 Binder] Fed.Sec.L.Rep. ¶ 92,207 at 91,570.

Statutory construction determines whether a private right of action exists. *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). As the Supreme Court has emphasized, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon*, 441 U.S. at 688, 99 S.Ct. at 1946. Whether a statute creates a private right of action is ultimately "one of Congressional intent, not one of whether ... [the court] thinks it can improve upon the statutory scheme that Congress enacted into law." *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981), *quoting Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court laid out a four-factor analysis for determining whether to infer a private right of action: (1) Is plaintiff one of the class for whose particular benefit the statute was enacted? (2) Is there any indication of legislative intent to create a right of action? (3) Is it consistent with the underlying purposes of the legislative scheme to infer such a remedy? (4) Is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law? *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088 (1975).

The first two *Cort* factors are dispositive here, for if the "language of the statute and its legislative history do not suggest that the ... [statute] was intended to create federal rights for the especial benefit of a class of persons," then the court need not address the statute's purposes or its relation to state law. *California v. Sierra*

*Club,* 451 U.S. 287, 297–98, 101 S.Ct. 1775, 1781–82, 68 L.Ed.2d 101 (1981).

The first *Cort* factor, when applied to § 17, does not reveal the creation of a federal right in favor of plaintiff. "The statute on its face does not benefit any particular class of plaintiffs, but rather 'merely represents a general censure of fraudulent practices.' " *Ackerman,* [1985–86 Binder] Fed.Sec.L.Rep. ¶ 92,207 at 91,-570–71, *quoting Landry v. All American Assurance Co.,* 688 F.2d 381, 389 (5th Cir. 1982).

The second *Cort* factor also cuts against inferring a private right of action from § 17, as the legislative history reveals no indication that Congress intended to create civil liability in this section of the Securities Act.

> " 'The literature of both contemporaneous and subsequent commentators is unanimous that § 17 was meant only to afford a basis for injunctive relief and criminal prosecution, not to supplement the civil liabilities set out in §§ 11 and 12.' *Bruns v. Ledbetter,* 583 F.Supp. 1050, 1053 (S.D.Cal.1984). Virtually all of the courts which have investigated the legislative history of § 17 have determined that there was no intention to create civil liability under § 17."

*Ackerman,* [1985–86 Binder] Fed.Sec.L. Rep. ¶ 92,207 at 91,571.

Although *Kirshner* has not been abandoned explicitly by the Second Circuit, I nevertheless find that in light of recent precedent and legislative history, no private right of action may be inferred from § 17 of the Securities Act of 1933. Therefore, plaintiff fails to state a claim under § 17 and defendants' motion to dismiss plaintiff's second and eighth claims is granted.

### V.

Plaintiff, in his fifth claim, alleges that defendants, through a pattern of racketeering activity, acquired and maintained an interest in, participated in and received income from an enterprise engaged in interstate commerce in violation of 18 U.S.C. §§ 1962(a), (b) and (c). Defendants Bogert and Devins advance two arguments to dismiss plaintiff's RICO claim: (1) the complaint fails to plead fraud with particularity as required by Fed.R.Civ.P. 9(b); and (2) the complaint fails to allege "continuity" as required by decisional law to assert a "pattern" of racketeering activity under RICO. Because plaintiff pleads fraud with particularity with respect to the § 10(b) predicate acts and properly alleges a pattern of racketeering activity, defendants' motion with regard to the RICO claim is denied.

■ To establish a civil RICO claim, plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A pattern of racketeering activity requires the commission within a ten-year period of at least two predicate acts that violate laws listed in 18 U.S.C. § 1961(1); these acts must be related and must amount to, or threaten the continued likelihood of, continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989).

■ Section 1961(1) of Title 18 defines "racketeering activity" to include, *inter alia,* violations of federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, and "any offense involving . . . fraud in the sale of securities." Because the alleged predicate acts in the case at bar are violations of the mail and wire fraud statutes as well as alleged violations of §§ 15 and 17 of the Securities Act and §§ 10 and 20 of the Securities Exchange Act, the RICO claim sounds in fraud. Therefore, each allegation of a predicate act must meet Rule 9(b)'s standards for particularity.[4] *See Beauford v. Helmsley,* 865 F.2d 1386, 1393 (2d Cir.1989) *(en banc), vacated for further consideration,* —— U.S. ——, 109

---

4. Although these predicate acts based in fraud must be pleaded with particularity, the pleading of the RICO conspiracy, "apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990).

S.Ct. 3236, 106 L.Ed.2d 584 (1989), *upheld,* by order of Sept. 15, 1989. *See also Anitora Travel, Inc. v. Lapian,* 677 F.Supp. 209, 214 (S.D.N.Y.1988); *Moll v. U.S. Life Title Ins. Co.,* 654 F.Supp. 1012, 1034–35 (S.D.N.Y.1987).

As discussed above, plaintiff has pleaded his § 10(b) claim with sufficient particularity under Rule 9(b) and thus properly has set forth at least one predicate act for his RICO claim.[5] Further, because § 17(a) of the Securities Act does not provide a private right of action, as discussed above, plaintiff cannot base a RICO claim on such an alleged violation.

Plaintiff's allegation of mail and wire fraud as an underlying act does not satisfy the requirements of Rule 9(b). Plaintiff does not provide any details about defendants' use of the mail except for allegations in paragraph 97 that "[t]he uses of the mail included, but were not limited to, transmittal of the private placement memoranda for New Castle to Devins in 1984, as well as to a multitude of potential investors, and thereafter the subsequent transmission of letters to plaintiff misrepresenting that a sale of New Castle's property was imminent." As discussed above, to state fraud with particularity, plaintiff must specify the time, place, speaker, and content of the alleged misrepresentations. *Luce,* 802 F.2d at 54. Here, plaintiff asserts that Bogert and the other insiders sent a private placement memorandum to Devins, another defendant. Nowhere does the complaint assert that this memorandum contained fraudulent statements, or that it was sent to plaintiff as part of the fraud; in fact, plaintiff alleges in paragraph 41 that "[n]o offering memorandum for New Castle was provided to plaintiff for his review." Further, plaintiff does not specify who sent the letters misrepresenting that a sale of New Castle's property was imminent, when such letters were sent, or any other circumstances surrounding these alleged fraudulent communications. *See The Limited, Inc.,* 645 F.Supp. at 1047. Such vague assertions do not give defendants sufficient notice of the claims against them. Defendants' motion to dismiss the allegation of mail and wire fraud for failure to satisfy Rule 9(b) is granted and plaintiff is given leave to replead this claim.

Despite plaintiff's failure to allege mail and wire fraud properly, plaintiff successfully states a claim under RICO, as he properly alleges the conduct of an enterprise through a pattern of racketeering activity solely on the basis of defendants' activities in violation of § 10(b). Therefore, defendants' motion to dismiss plaintiff's RICO claim is denied.

A "pattern" under RICO "requires at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Recently, the Supreme Court explained that two predicate acts alone do not form a pattern; rather, Congress envisioned "a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H.J. Inc.,* 109 S.Ct. at 2899. Plaintiffs or prosecutors thus must "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.,* 109 S.Ct. at 2900. (emphasis in original) Whether or not the predicates establish a threat of continued racketeering depends upon the facts of each case; alleged conduct may be continuous either if it took place repeatedly over a "closed" period, or if such conduct was open-ended and "by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 109 S.Ct. at 2902.

In *H.J. Inc.,* the Supreme Court expressly rejected an analysis that would require the existence of multiple schemes in order to show continuity. *H.J. Inc.,* 109 S.Ct. at

---

**5.** Insofar as § 20 of the Securities Exchange Act merely provides for liability of a controlling person for acts committed in violation of other sections of the Act, *see, e.g., Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1568 (E.D.N.Y.1985), a claim under this section does not alone constitute a predicate act; therefore, the sufficiency of plaintiff's passing reference to § 20 need not be addressed.

2901. Prior Second Circuit decisions already had adopted the view that "a RICO pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions." *Beauford v. Helmsley*, 865 F.2d at 1391. *See United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.1989) (*en banc*), *cert. denied*, —— U.S. ——, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989); *Procter & Gamble Co. v. Big Apple Ind. Buildings, Inc.*, 879 F.2d 10, 16 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990). Rather, in order to allege continuity, "[w]hat is required is that the complaint plead a basis from which it can be inferred that the acts of racketeering activity were neither isolated nor sporadic." *Beauford*, 865 F.2d at 1391.

In the case at bar, regardless of what plaintiff will be able to prove at a later stage of the proceedings, he has sufficiently pleaded a pattern of racketeering activity by setting forth circumstances which suggest that related acts of securities fraud were neither isolated nor sporadic. On a motion to dismiss a RICO claim, the court must read the facts in the light most favorable to plaintiff, and may dismiss the case only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc.*, 109 S.Ct. at 2906, *citing Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). At the pleading stage, if the threat of continuing racketeering activity is inferable from the complaint, then whether "defendants' actions are continuing in nature or isolated or sporadic will be the subject of proof at trial." *Procter & Gamble*, 879 F.2d at 18.

Although plaintiff alleges only § 10(b) claims with particularity, the facts stated in the complaint could rationally support the conclusion that more than one act of securities fraud took place during the three years that plaintiff was making payments on his New Castle investment. Plaintiff alleges that, based on misrepresentations made by Devins at the direction of the other defendants, and without the necessary disclosure of material information, he purchased a one-half unit interest in New Castle on December 31, 1984. (Compl. ¶¶ 27, 34, 37–43) This sale of a security constitutes the first alleged predicate act. Then, in April, 1985, plaintiff purchased another one-half unit interest in New Castle based on Devins' misrepresentations. (Compl. ¶¶ 28, 37–43) This second sale constitutes a second alleged predicate act. Further, plaintiff alleges that defendants forged promissory notes in the names of plaintiff and other investors and then pledged such notes to banks in order to obtain loans. (Compl. ¶¶ 40, 42) Plaintiff later paid off these fraudulent notes upon the instructions of Devins, who told him these payments were in satisfaction of his investment in New Castle. (Compl. ¶¶ 44–49) These payments, which exceeded the alleged purchase price of the partnership interest by a substantial sum, continued until July, 1988.

Plaintiff asserts in his complaint that defendants' scheme to defraud investors is lasting and open-ended, as these defendants are in the business of selling and distributing units in limited partnerships. (Compl. ¶ 101) From the complaint as a whole, however, the alleged fraudulent acts seem to occur during a closed-ended period of time; nonetheless, plaintiff sufficiently alleges the requirements of relatedness and continuity to plead a RICO pattern. In *H.J. Inc.*, the Supreme Court explained that a party may demonstrate continuity over a closed period by "proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long term criminal conduct." *H.J. Inc.*, 109 S.Ct. at 2902. District courts since the *H.J. Inc.* holding have looked to "a variety of non-dispositive factors in their case-by-case analysis of what constitutes 'continuity' sufficient to establish a pattern in a closed-ended scheme.... These factors include the duration of the racketeering acts ... the number of such acts ... the number of participants ... and the number of vic-

tims." *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F.Supp. 926, 948 (S.D.N.Y. 1989). Here, the complaint alleges at least two predicate acts that took place within a larger scheme that lasted approximately three years. The alleged fraudulent scheme involved a complex series of financial transactions and numerous people. Such activity cannot be deemed isolated and sporadic, especially at the pleading stage, but rather indicates the type of continuity required to form a pattern under RICO. Further, the alleged activities, involving the same purpose, goals, participants and methods of commission satisfy the "relatedness" prong of the pattern requirement. *See Procter & Gamble*, 879 F.2d at 16, *citing Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

Plaintiff also has alleged facts supporting the inference that defendants constituted a group of people associated together for the common purpose of engaging in a course of conduct, and thus sufficiently has pleaded the enterprise element of a RICO claim. *See Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. Section 1961(4) of Title 18 defines a RICO enterprise as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Here, plaintiff has alleged that defendants all worked together to defraud plaintiff and other investors, and has described the roles each defendant played in the New Castle enterprise.

For the above reasons, defendants' motion to dismiss plaintiff's RICO claim is denied.

## VI.

In his sixth claim, plaintiff alleges common law negligence against Devins for his failure to use reasonable care in advising plaintiff to invest in New Castle and Decker Malls. This claim in effect is one for accountant or investment advisor malpractice. As such, the claim ordinarily would be time barred and therefore dismissed. Nevertheless, because plaintiff has alleged a rebuttal to the statute of limitations defense which, under an imaginable set of facts, could toll the statute of limitations, these claims too will survive the motion to dismiss.

As discussed above, New York's borrowing statute applies when plaintiff is not a resident of New York and the cause of action accrued outside New York. Here, plaintiff is a resident of Florida, but it is unclear where the cause of action accrued, as Devins is a New York resident and plaintiff never alleges where the wrongful act or omission took place. Nevertheless, whether the cause of action accrued in New York or Florida, the applicable statute of limitations would be either two years or three years, and thus the claim ordinarily would be barred. New York's statute of limitations for both professional malpractice, C.P.L.R. § 214(6) and negligence, C.P.L.R. § 214(4) is three years. Florida's statute of limitations for professional malpractice is two years, Fla.Stat. § 95.11(4)(a), and for negligence is four years. Fla.Stat. § 95.11(3)(a). Therefore, under the borrowing statute the applicable statute of limitations would be three years for a negligence claim and two years for a professional malpractice claim.

A cause of action for malpractice accrues at the time of the wrongful acts or omissions. *Gilbert Properties Inc. v. Millstein*, 40 A.D.2d 100, 338 N.Y.S.2d 370, 371 (First Dep't 1972), *aff'd*, 33 N.Y.2d 857, 352 N.Y.S.2d 198, 307 N.E.2d 257 (1973), *overruled on other grounds*, *Video Corp. v. Frederick Flatto Assoc.*, 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983). Here, plaintiff alleges the numerous means by which Devins violated his duty to use reasonable care in advising plaintiff, but the bottom line is that the wrongful acts occurred when Devins advised plaintiff to buy interests in New Castle and Decker Malls, and when plaintiff obligated himself to buy such interests. Devins advised plaintiff to invest in New Castle first in December, 1984 and again in April, 1985, and plaintiff made the first payment on the New Castle interest in May, 1985. Devins advised plaintiff to invest in Decker Malls in September, 1985, and plaintiff purchased

a one-unit interest in Decker Malls on September 30, 1985. Because all of these events took place more than three years before the complaint was filed in June, 1989, plaintiff's negligence or malpractice claim as to both New Castle and Decker Malls will be time-barred if he does not prevail in his continuous relationship riposte to the statute of limitations defense.

█ Plaintiff argues that these claims are not time-barred because of the continuous treatment doctrine, which tolls the statute of limitations until the end of a professional relationship involving the same services as those giving rise to the claim, or related services. Plaintiff alleges that his professional relationship with Devins did not end until June, 1989, and that until that time Devins continued to provide services to Dymm with respect to his investments in New Castle and Decker Malls.

The continuous treatment—or continuous relationship—doctrine was first applied in a medical malpractice suit. *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). In *Borgia*, the New York Court of Appeals determined that "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the 'accrual' comes only at the end of the treatment." *Borgia*, 237 N.Y.S.2d at 321–22, 187 N.E.2d 779–80.[6] The continuous relationship doctrine is based in part on the view that it would be "absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent...." *Borgia*, 237 N.Y.S.2d at 321–22, 187 N.E.2d 779–80. *See also Kossick v. United States*, 330 F.2d 933, 936 (2d Cir.1964), *cert. denied*, 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964). The doctrine is based also on the rationale that,

"it is not reasonable to expect a patient who is in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries ... This rationale in turn rests on four interrelated concerns. First, during treatment a negligent doctor may conceal important information from a patient ... Second, the confidential relationship that exists between doctor and patient might inhibit the patient from questioning the care given during the existence of the relationship ... Third, the chance that investigating the cause of an injury will interrupt care weighs against requiring a patient to discover an injury during a course of continuous treatment ... Finally, the rationale is supported by the need for flexibility in determining the cause of the latent injury."

*Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1081 (2d Cir.1988).

Since *Borgia*, courts have expanded the list of those whose professional activities are subject to the continuous treatment doctrine to include attorneys, *see Greene v. Greene*, 56 N.Y.2d 86, 451 N.Y.S.2d 46, 436 N.E.2d 496 (1982), dentists, *see Wehle v. Giovanniello*, 137 A.D.2d 680, 524 N.Y. S.2d 772 (Second Dep't 1988), accountants, *see In re Investors Funding Corp.*, 523 F.Supp. 533, 547 (S.D.N.Y.1980), architects, *see Bd. of Ed. of the Hudson City School Dist. v. Thompson Construction Corp.*, 111 A.D.2d 497, 488 N.Y.S.2d 880 (Third Dep't 1985), and surveyors. *See Tool v. Boutelle*, 91 Misc.2d 464, 398 N.Y.S.2d 128 (Sup.Ct. Albany Co. 1977). In the case at bar, Devins committed the allegedly wrongful acts not in his capacity as an accountant, but rather as plaintiff's investment advisor. Plaintiff did, however, allege that in the professional relationship between Devins and plaintiff, "[p]laintiff was and is not sophisticated or knowledgeable about financial matters and completely relied on Devins to handle his financial affairs. Plaintiff reposed his faith and confidence in Devins." (Compl. ¶ 12) Further, the com-

---

**6.** In *McDermott v. Torre*, 56 N.Y.2d 399, 452 N.Y.S.2d 351, 437 N.E.2d 1108 (1982), the New York Court of Appeals explained that although cases such as *Borgia* use the term "accrual" to describe the effect of the continuous treatment doctrine, applying the doctrine does not delay the claim's accrual, but rather, it tolls the statute of limitations so long as the physician or other professional continues to treat the plaintiff. *McDermott*, 56 N.Y.2d at 407, 452 N.Y.S.2d 351, 437 N.E.2d 1108.

plaint alleges that plaintiff's relationship with Devins did not end until June, 1989, and that Devins was advising plaintiff about his investments in Decker Malls and New Castle until that time. (Compl. ¶ 66)

At least on its face, plaintiff's complaint states facts sufficient to toll the statute of limitations, as the relationship it asserts is a continuous one involving professional advice about matters that are the same or related to the subject of the suit. Whether the relationship in fact was continuing, or even whether it was sufficient to merit application of the continuing relationship doctrine, should be the subject of later proof. *In re Investors Funding Corp.*, 523 F.Supp. at 549; *Cohen v. Goodfriend*, 642 F.Supp. 95, 101–02 (E.D.N.Y.1986). Therefore, defendants' motion to dismiss plaintiff's sixth claim is denied.

## VII.

■■■■■ Plaintiff, in his fourth claim, alleges that defendants breached fiduciary duties by not disclosing relevant information regarding plaintiff's investment in New Castle. Bogert argues that there is no basis for asserting such a claim against him, as Bogert and plaintiff never met, conversed, or had any contact. This contention, however, ignores Bogert's position as vice-president of KT Building Associates, Inc., the general partner in the New Castle partnership, as well as his positions as a promoter and controlling person of the New Castle partnership and principal and controlling person of McCorhill, the managing agent of the New Castle partnership. General partners owe fiduciary duties to their limited partners. *See Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1078 (2d Cir.1977, *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Ayerslee Corp., N.V. v. Overlook Sponsor Corp.*, 618 F.Supp. 1398, 1403 (S.D.N.Y. 1985), *aff'd mem.*, 800 F.2d 1127 (2d Cir. 1986). Because the complaint alleges that Bogert was an officer in the general partner of the New Castle partnership, this claim survives a motion to dismiss.

Devins argues also that he was not in a fiduciary relationship with plaintiff, and that even if he was, the breach of fiduciary duty claim should be treated as a professional malpractice claim and barred by the statute of limitations. As discussed above, *supra* p. 41, plaintiff has alleged a professional relationship involving confidentiality and trust which conceivably could constitute a fiduciary relationship. The claim therefore cannot be dismissed at this point on the ground that Devins did not have a fiduciary duty toward plaintiff.

■■■■ The claim also is not barred by either the New York or Florida statute of limitations. In New York, an action for breach of fiduciary duty has been deemed to be equitable in nature and therefore to have a six-year statute of limitations. *Loengard v. Santa Fe Indus.*, 70 N.Y.2d 262, 267, 519 N.Y.S.2d 801, 804, 514 N.E.2d 113, 116 (1987). *See also Fava v. Kaufman*, 124 A.D.2d 42, 44, 511 N.Y.S.2d 447 (Third Dep't 1987); *Zola v. Gordon*, 685 F.Supp. 354, 374 (S.D.N.Y.1988). The statute does not begin running until the plaintiff has actual or constructive knowledge of the breach.[7] *Zola*, 685 F.Supp. at 374;

---

7. There is a dispute as to whether the statute of limitations for breach of fiduciary duty begins to run upon the actual breach or when plaintiff discovered the breach. New York courts, in cases similar to the one at bar, seem to address the fraud and breach of fiduciary duty claims together, and thus apply the fraud standard to when the claim accrued. *See Fava v. Kaufman*, 124 A.D.2d 42, 511 N.Y.S.2d 447, 448 (Third Dep't 1987); *Whalen v. Gerzof*, 546 N.Y.S.2d 705, 708 (Third Dep't 1989). Under New York law, the statute of limitations for fraud claims is six years from the commission of the fraud or two years from the discovery. CPLR 213(1), (8); 203(f). In *Fava*, the court noted that all "of plaintiff's causes of action sound in or arise out of fraud, and a cause of action must be commenced within six years of the commission of the fraud unless the discovery exception extends the period." *Fava*, 511 N.Y.S.2d at 449. In *Whalen*, the court also considered the cause of action to have accrued when the fraud took place, but explained that a reasonable person should have made diligent inquiries when the fraud took place, thus implying that the standard also is whether plaintiff knew or should have known of the breach of fiduciary duty. *Whalen*, 546 N.Y.S.2d at 708.

Regardless of whether the breach of fiduciary duty claim accrued when the breach was committed or when plaintiff should have discovered

*Public Serv. Co. v. Chase Manhattan Bank, N.A.,* 577 F.Supp. 92, 109 (S.D.N.Y. 1983). In Florida, an action for breach of fiduciary duty is governed by a four-year statute of limitations. Fla.Stat.Ann. § 95.11(3)(p).[8] The Florida statute of limitations does not start running until plaintiff has discovered the existence of his cause of action. *See Zola,* 685 F.Supp. at 374. *See also Van Dusen v. Southeast First National Bank,* 478 So.2d 82, 91–92 (Fla. 3d Dist.Ct.App.1985); CPLR § 206(a)(1).

Defendants argue in their brief that, as regards the breach of fiduciary duty claim, plaintiff should have known, through the exercise of reasonable diligence, of the existence of a claim regarding New Castle on July 19, 1985 "when he should have inquired as to the documents underlying his payments to New Castle, Cititrust and Ingersoll–Rand." (Def. Br. at 36) As discussed above, *supra* p. 24, this is an issue of fact to be determined at a later date. Nonetheless, even assuming that July 19, 1985 is the date when plaintiff's claim accrued, the claim is not time-barred under either Florida or New York law. Therefore, defendant's motion to dismiss plaintiff's breach of fiduciary duty claim is denied.

\* \* \*

For the above reasons, defendants' motion to dismiss plaintiff's second and eighth claims pursuant to Fed.R.Civ.P. 12(b)(6) is granted, there being no private right of action under § 17(a) of the Securities Act of 1933. Defendants' motion to dismiss plaintiff's other claims for failure to plead fraud with particularity pursuant to Fed.R. Civ.P. 9(b) and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is denied. Plaintiff will file by March 16, 1990 a new complaint in which he may replead, if he

---

the breach, plaintiff's claim is not time-barred under New York's six year statute.

**8.** This section provides for a four year statute of limitations for any "action not specifically provided for in these statutes." Florida courts, however, have ruled that a breach of fiduciary duty action falls into this category. *See Puchner v. Bache Halsey Stuart Inc.,* 553 So.2d 216 (Fla.

can, the stricken wire and mail fraud predicate acts in his RICO claim.

SO ORDERED.

---

3d Dist.Ct.App.1989). Courts also have indicated that a breach of fiduciary duty action is statutory, *see* Fla.Stat.Ann. § 733.609 (West 1976), and governed by the four year statute of limitations for statutory causes of action. Fla. Stat.Ann. § 95.11(3)(f). *See Zola,* 685 F.Supp. at 374.