Anthony MIELE, Plaintiff,

v.

**PENSION PLAN OF NEW YORK STATE TEAMSTERS CONFERENCE PENSION & RETIREMENT FUND and Board of Trustees of Pension Plan of New York State Teamsters Conference Pension & Retirement Fund, Defendants.**

No. 97–CV–475 (ARR).

United States District Court, E.D. New York.

Aug. 25, 1999.

Edgar Pauk, Legal Services for the Elderly, New York City, for plaintiff.

Vincent DeBella, Paravati, Karl, Green & DeBella, Utica, NY, for defendant.

### AMENDED OPINION AND ORDER

ROSS, District Judge.

On January 29, 1997, the plaintiff Anthony Miele filed the instant action under the Employee Retirement Income Security Act ("ERISA"). The defendants filed an answer and counterclaim on March 13, 1997. Pending before the court are motions for summary judgment from both parties. For the reasons set forth below, the court grants the defendants' motion for summary judgment in part and defers decision on the remainder of the motions pending a hearing regarding the timeliness of plaintiff's remaining claims.

I Factual and Procedural Background

Except where noted, the following facts are not in dispute. Plaintiff Anthony Miele worked for Rheingold Brewery ("Rheingold") from 1952 until February 4, 1974, when he ceased working and began to receive Workers' Compensation benefits. According to plaintiff, he remained a Rheingold employee until June 18, 1976, when he was laid off with 26 weeks of severance pay. *See* Compl., ¶ 14. However, according to defendants, plaintiff's effective date of retirement was September 5, 1975. *See* DaBella Affid., ¶ 16. During his employment with Rheingold, the plaintiff was a participant in the Brewery Workers Pension Fund ("Brewery Fund"), a multiemployer pension plan entered into by the Brewery Workers Local 46 ("Local 46") and brewery employers in the New York area. In 1978, plaintiff was awarded

a Brewery Fund disability award pension of $155.93 per month.[1]

The defendant New York State Teamsters Conference Pension and Retirement Fund ("Teamsters Fund") operates pursuant to an Agreement and Declaration of Trust ("Trust Agreement") entered into by participating employers and union locals affiliated with the International Brotherhood of Teamsters, AFL—CIO ("Teamsters") and is a multiemployer employee benefit plan under 29 U.S.C. §§ 1002(3) and 1037(a). Defendant Teamsters Fund is managed by defendant Board of Trustees ("Board"), comprised of four employer representatives and four union representatives. The trustees are fiduciaries of the Teamsters Fund under 29 U.S.C. § 1002(21).

On August 7, 1973, defendant Teamsters Fund and the Brewery Fund finalized an Agreement and Plan of Integration ("Merger Agreement") to merge the Brewery Fund into the Teamsters Fund. Pursuant to the Merger Agreement, members of the Brewery Fund became members of the Teamsters Fund, and the Teamsters Fund assumed the legal obligations of the Brewery Fund. See DeBella Affid., Exh. F at 2. The Merger Agreement generally allowed Brewery Fund members to elect to receive benefits under either the Teamsters Fund's plan or under the Brewery Fund's plan. See id. at 3. However, the Merger Agreement expressly provided that Brewery Fund members "for whom no contributions are made to the Teamsters Fund after the effective date of this Agreement" remained eligible only for Brewery Fund benefits. Id. at 6. For those Brewery Fund members who chose Teamsters Fund benefits, the Merger Agreement provided a formula for calculating pension benefits. See id. at 3. The merger was approved by the IRS on September 28, 1976, and December 1, 1976 was designated the effective date of the merger.

On June 14, 1979, plaintiff attempted to exercise his option under the Merger Agreement to have his benefits calculated under the Teamsters Fund rather than the Brewery Fund. See DeBella Affid., Exh. H. On November 16, 1979, the Teamsters Fund refused to award plaintiff benefits under the Teamsters Fund on the grounds that no contributions were made on his behalf after December 1, 1976, the effective date of the merger. See DeBella Affid. Exh. I. Plaintiff submitted a second request for benefits under the Teamsters Fund on December 12, 1979, but the request was rejected by letter dated December 18, 1979. See DeBella Affid., Exhs. I1 & I2.

On June 2, 1980, an action entitled *Brewery Delivery Employees Local Union 46 v. Mosley*, 80–CV–1476 (Glasser, J.), was filed in this court against the Teamsters Fund by Local 46 concerning the Merger Agreement. Approximately ten years later, in a settlement agreement dated August 30, 1990, all parties released all claims related to the action. See DeBella Affid., Exh. V. A Stipulation and Order dismissing the case with prejudice was entered the next day.

On January 8, 1981, the plaintiff commenced an action in the Eastern District of New York against the Teamsters Fund and the Board entitled *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 81–CV–0084 (Wexler, J.) (*hereinafter "Miele I"*). In that action, the plaintiff sought, amongst other relief, a judicial determination that he was eligible for benefits under the Teamsters Fund. On January 23, 1985, the parties to *Miele I* entered into an Agreement of Settlement ("Settlement Agreement"). In return for dismissal of the plaintiff's claims with prejudice, the Teamsters Fund agreed to "de-

---

1. According to plaintiff, his disability pension was effective May 1978, despite his contentions that it should have been effective September 1, 1975. See Compl., ¶ 21. According to the defendants, plaintiff received a pension check retroactive to September 5, 1975. See DaBella Affid., ¶ 16.

termine as expeditiously as reasonably possible [the plaintiff's] eligibility to pension benefits, and the amounts of such pension benefits to which [he] may be so entitled, in accordance with the pension plan of the [Teamsters] Fund, rather than in accordance with the pension plan of the Brewery Fund." *See* DeBella Affid., Exh. N at 6. The parties did not make "any admissions or concessions . . . with respect to the disputed issues that exist between themselves. . . ." *Id.* at 5. The Settlement Agreement also included a confidentiality provision and was filed with the court under seal. *See* Def. Local Rule 56.1 State. of Undisp. Facts, ¶ 29. Based on the Settlement Agreement, the parties executed a Stipulation and Order of Dismissal which was entered by Judge Wexler on January 23, 1985.

On March 13, 1985, acting pursuant to the *Miele I* Settlement Agreement, the Teamsters Fund calculated the plaintiff's pension as amounting to $171.22 per month, a $14.29 increase over his pension under the Brewery Fund. The Teamsters Fund also forwarded the plaintiff a $1,758.93 check representing a lump sum payment for retroactive benefits. After plaintiff's counsel contacted the Teamsters Fund for clarification, the Fund responded with a letter dated February 4, 1986 detailing the calculation formula employed. *See* Pauk Affirm., Exhs. G3–G4. Plaintiff's counsel responded with a letter dated February 10, 1986, in which he questioned the defendants' calculations particularly with regard to defendants' alleged disregard of contributions "made on his behalf up to and including June 18, 1976." *Id.* at Exh. G5. After reexamining the plaintiff's file, *see id.* at Exhs. G7–G8, the defendants did not find any further benefits to be due. *See id.* at Exhs. G8, G13, G15, & G17. In response to further correspondence, Peter P. Paravati, then counsel to defendant Teamsters Fund, informed plaintiff's counsel that the formula for calculating the

plaintiff's pension came "not from the Teamsters' Plan, but from the merger agreement." *Id.* at Exh. G21; *see also id.* at Exh. G22.

On October 17, 1988, plaintiff's counsel again requested clarification regarding the defendants' refusal to consider contributions to the Brewery Fund allegedly made on plaintiff's behalf during 1974, 1975, and 1976. *See id.* at Exh. G23. In response, defendants' then-counsel Paravati informed plaintiff's counsel by letter dated October 25, 1988 that the Fund's approach to such contributions depended upon the terms of the applicable collective bargaining agreements ("CBAs"). *See id.* at Exh. G24. According to Paravati, "the Brewery [CBAs] did not provide for contributions during those particularly (sic) instances." *Id.* According to plaintiff's counsel, he subsequently made "extended, but unsuccessful efforts to obtain the relevant [CBAs] from various sources, including the [Teamsters] Plan itself." Compl., ¶ 35. Unable to locate the CBAs and relying upon Paravati's characterization of them, the plaintiff declined to pursue his case further.

In August 1994, plaintiff's counsel came upon copies of the Brewery CBAs, which appear to require employer contributions for employees who suffered industrial injuries or illness and who received workers' compensation benefits.[2] *See* Pauk Affirm., Exhs. H1–H2. After some subsequent correspondence between the parties, the plaintiff filed the instant action on January 29, 1997.

In his complaint, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 1132(a)(3), the plaintiff states three causes of action. First, the plaintiff claims that, by disregarding contributions on plaintiff's behalf during his workers' compensation period and thus failing to award him full pension credit for the years 1974, 1975, and 1976, defendant Board violated the terms of the Teamsters Plan and, therefore, violated ERISA. *See* Compl., ¶ 52. In his second claim, the

---

**2.** It should be noted that the defendant denies the contention by plaintiff's counsel that he

only discovered the CBAs in 1994. *See* Def. Supp.Memo., 7 n. 2; Answer, ¶ 26.

plaintiff contends that the defendant Board breached its fiduciary duty to the plaintiff by concealing and misrepresenting the terms of the CBAs in the October 25, 1988 letter. *See id.* at ¶¶ 53–54. Third, the plaintiff claims that the defendant Board has violated and continues to violate the Teamsters Plan by denying participants pension credits for periods during which participants receive Workers' Compensation benefits. *See id.* at ¶ 55. In his complaint, the plaintiff asks the court to declare the Board's practice of denying pension credits for periods during which participants receive Workers' Compensation benefits a violation of the Teamsters Plan, to enjoin said practice, to order the Teamsters Fund to recalculate his pension and pay him retroactive benefits plus interest, to order the Fund to notify all similarly situated participants of their rights to recalculation, and to award the plaintiff costs. *See id.*, Prayer for Relief.

After the defendants answered the plaintiff's complaint and counterclaimed for sanctions, costs, and attorney's fees for bringing a frivolous lawsuit, *see* Answer & Counterclaim, the parties filed cross-motions for summary judgment on August 18, 1998. In his motion, plaintiff not only moved for summary judgment on the claims in his complaint, but also appended what amounts to an additional claim, alleging that, under the *Miele I* Settlement Agreement, the plaintiff's pension should have been calculated pursuant to the Teamsters Fund plan, rather than pursuant to the Merger Agreement. *See* Pl. Memo. of Law, 8–10; Pl. Reply Memo., 1–9. The defendants opposed plaintiff's motion and filed their own motion for summary judgment, arguing that the court has no subject matter jurisdiction, that the plaintiff's claims are barred by *res judicata*, collateral estoppel, and waiver, and that the plaintiff's claims are time-barred, in addition to arguing the case's merits. *See* Def.Memo. of Law. Moreover, defendants' counsel not only moved for sanctions against plaintiff's counsel for filing a frivolous lawsuit, but also added a request for an order of contempt against plaintiff's counsel for disclosing the terms of the confidential *Miele I* settlement agreement in plaintiff's initial pleadings in this court. *See id.* at 60–63.

After reviewing the parties' submissions, the court ordered supplemental briefs addressing the viability of plaintiff's fiduciary duty claim under *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), and its progeny. *See* Order, 4/8/99. In his supplemental brief, plaintiff clarified his three claims for relief. Plaintiff's first claim constitutes a straightforward personal benefits claim brought under 29 U.S.C. § 1132(a)(1)(B) and alleges miscalculation of plaintiff's benefits. *See* Pl.Supp.Memo., 6. Plaintiff's second claim is a breach of fiduciary duty claim, premised upon the alleged concealment and misrepresentation regarding the CBAs, but the only relief sought is "tolling of the statute of limitations" with regard to his other claims. *See id.* at 5–6. Accordingly, if the court finds plaintiff's other claims to be timely, the plaintiff acknowledges that "the Second Claim will serve no purpose and should be dismissed." *Id.* at 6. Finally, plaintiff clarified that his third claim—that the defendants engaged in a practice of violating the plan by miscalculating benefits for participants receiving workers' compensation—is being brought under § 1132(a)(3) and seeks injunctive relief. *See id.* at 9–10. The defendant argues that the plaintiff's breach of fiduciary duty claim is precluded by *Varity*. *See* Def. Memo. of Law, 1.

## II Analysis

### A Subject Matter Jurisdiction

The defendants first argue that the court should dismiss the plaintiff's claims for lack of subject matter jurisdiction. According to defendants, the complaint must be dismissed because the Merger Agreement, the plaintiff's final day of work, plaintiff's retirement, and plaintiff's disputed pension contributions all occurred

prior to January 1, 1976, which the parties agree is the effective date of ERISA's relevant provisions. *See* Def.Memo. ' of Law, 20–21; Pl. Reply Memo., 26. The plaintiff counters that the court has subject matter jurisdiction because the basis for his miscalculation claims is the 1985 *Miele I* settlement agreement, which was reached well after ERISA's effective date. *See* Pl.Memo. of Law, 23–26.

■ In enacting ERISA, Congress included a preemptive section providing that ERISA's provisions "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan [covered by ERISA]." 29 U.S.C. § 1144. The Supreme Court has held that ERISA's preemptive provision must be broadly construed. *See Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). As a result, any state law claim which relates to an employee benefit plan covered by ERISA not only is preempted by ERISA but also constitutes a federal claim arising under the laws of the United States. *See Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Board of Trustees of Hotel & Restaurant Employees Local 25 v. Madison Hotel, Inc.,* 97 F.3d 1479, 1484 (D.C.Cir.1996). The relatedness requirement has been interpreted broadly. *See FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Madison Hotel,* 97 F.3d at 1486. In particular, in cases involving settlement agreements whose enforcement requires interpretation or application of ERISA law, courts have ruled state-law claims preempted and have found federal jurisdiction. *See Madison Hotel,* 97 F.3d at 1483–87; *Boren v. N.L. Industries, Inc.,* 889 F.2d 1463, 1466 (5th Cir.1989).

In this case, the defendants do not dispute that, at the time of the *Miele I* settlement in 1985, the Teamsters Fund was an employee benefit plan covered by ERISA. *See* Def.Memo. of Law, 1. Under the *Miele I* settlement agreement, the parties agreed that, in return for a dismissal of the plaintiff's action, the defendants would "determine as expeditiously as reasonably possible [the plaintiff's] eligibility to pension benefits, and the amounts of such pension benefits to which [he] may be so entitled, in accordance with the provisions of the [Teamsters] Fund...." Pauk Affirm., Exh. D ¶ 2(a). The defendants' determination, pursuant to the settlement, regarding the plaintiff's eligibility and benefit package under the Teamsters Plan thus appears to be governed by ERISA, as does the defendants' alleged misrepresentation regarding the terms of the CBAs. *See* 29 U.S.C. §§ 1104, 1109 (authorizing actions against fiduciaries who fail to discharge duties in accordance with governing documents and instruments); 29 U.S.C. § 1132 (authorizing actions to recover benefits and to enforce or clarify rights under the terms of the plan).

■ However, there remains an additional question. Though defendants recognize that the determination of plaintiff's eligibility and benefit package took place after ERISA's effective date, they argue that the determinations were the inexorable result of actions taken before that date and, consequently, are not governed by ERISA. *See* Def.Memo. of Law, 19–21. Because the Second Circuit has held that this argument is not jurisdictional in nature, *see Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1191 (2d Cir.1996), the court will address this argument in the next section.

B Failure to State Claim under 29 U.S.C. § 1144

29 U.S.C. § 1144 provides that the preemption provisions of ERISA "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before [ERISA's effective date]." As a result, courts have dismissed actions predicated on acts or omissions occurring before ERISA's effective date for failure to state a cause of action. *See Jiras v. Pension Plan of Make–Up Artist & Hair-*

*stylists Local 798,* 170 F.3d 162 (2d Cir. 1999); *Nowak,* 81 F.3d at 1191.

■ Under § 1144(b)(1), "ERISA is not applicable where (1) the plaintiff's asserted claim accrued, or (2) the relevant act or omission that served as the basis for the plaintiff's claim occurred, before [ERISA's effective date]." *Nowak,* 81 F.3d at 1189. In this case, it is undisputed that plaintiff's claims did not accrue until after the *Miele I* settlement agreement in 1985. The more difficult question is whether the act or omission occurred before ERISA's effective date.

In applying the act or omission clause of § 1144, the Second Circuit has recently held that "ERISA does not apply 'where a denial of benefits after [ERISA's effective date] was merely the inexorable consequence of a pre-[effective date] act or omission.'" *Jiras,* 170 F.3d 162 (2d Cir. 1999) (quoting *Nowak,* 81 F.3d at 1189). Post-effective date denials of benefits have been ruled the inexorable consequence of pre-effective date acts in cases where the benefit denials have involved "the application of undisputed law to undisputed facts." *See Jiras,* 170 F.3d 162 (citing *Nowak,* 81 F.3d at 1186, 1192 and *Lamontagne v. Pension Plan of United Wire, Metal and Machine Pension Fund,* 869 F.2d 153, 154–55 (2d Cir.1989)). However, in *Jiras,* the Second Circuit held that where a post-effective date denial of benefits involves the use of discretion to decide disputed questions of law and fact, the decision may not be deemed an inexorable consequence of pre-effective date acts or omissions. *See Jiras,* 170 F.3d 162. Because the trustees who decided against awarding Jiras benefits had to weigh evidence and arguments on both sides of Jiras's claims, the Second Circuit overturned the lower court's decision to dismiss the case under § 1144. *See id.*

■ In this case, as in *Jiras,* the trustees' decision regarding the level of the plaintiff's benefits did not involve the application of undisputed law to undisputed

facts. Even a cursory examination of the sequence of letters between plaintiff and defendants regarding the defendants' calculations, as well as the lengthy memoranda of law submitted to the court, reveals the complex and disputed nature of the defendants' calculations. As a result, the court rejects the defendants' contention that the case should be dismissed under § 1144.

### C *Res Judicata,* Collateral Estoppel, and Waiver

■ The court need not tarry long over defendants' arguments that the plaintiff's action is barred by the doctrines of *res judicata,* collateral estoppel, and waiver. The court recognizes that a voluntary dismissal with prejudice, as in *Miele I,* is "deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted or which could have been asserted in the suit." *Israel v. Carpenter,* 120 F.3d 361, 365 (2d Cir.1997). However, the court agrees with the plaintiff that his current claims regarding the defendants' misapplication of the Settlement Agreement were not and could not have been raised during *Miele I* for the simple reason that the Agreement itself represented the culmination of *Miele I. See* Pl. Reply, 31. Similarly, the plaintiff could not have raised his fiduciary duty claims during *Miele I* because the alleged breach of fiduciary duty took place after that litigation. Moreover, the defendants have not convinced the court that the plaintiff could have raised his current claims—regarding the calculation of his personal benefits under the *Miele I* settlement agreement or regarding the misrepresentation by defendants to plaintiff personally—in the class action *Mosley.* As a result, plaintiff's claims are not barred by *res judicata.*

■ With regard to defendants' collateral estoppel argument, "to have a preclusive effect on specific issues or facts, a voluntary dismissal also must be accompanied by specific findings sufficient for a subsequent court to conclude that certain

matters were actually decided." *Motrade v. Rizkozaan, Inc.*, 1998 WL 108013, at *5 (S.D.N.Y.1998) (citing *Schenk v. Mine Management Co.*, 1997 WL 31400, at *7 (N.D.N.Y.1997) and *Rose v. Bourne*, 172 F.Supp. 536 (S.D.N.Y.1959)). In this case, this court did not provide any findings of fact or law in authorizing the voluntary dismissal of *Miele I*. As a result, the court cannot grant the defendants summary judgment based on collateral estoppel. *See Motrade*, 1998 WL 108013, at *5–6. The same analysis applies to the voluntary dismissal entered in *Mosley*.[3]

▮▮▮ Finally, the defendants' waiver arguments are illogical. With regard to the *Miele I* agreement, the court simply does not understand how the plaintiff could have waived his right to future claims that the defendants breached the *Miele I* settlement agreement in that very same settlement agreement. Similarly, the plaintiff could not have waived his current fiduciary duty claim in the *Miele I* settlement agreement, since the alleged breach of fiduciary duty had not occurred at that time. Moreover, even if waivers of future claims were judicially cognizable, the defendants have not pointed the court to any language in the Settlement Agreement specifically waiving future claims. With regard to *Mosley*, the settlement agreement in that case also cannot be construed as waiving the plaintiff's personal claims arising from the *Miele I* settlement agreement.

### D Statute of Limitations

The defendants' next argument is that the plaintiff's claims are barred because the statute of limitations has expired. With regard to plaintiff's miscalculation claims, according to defendants, the six-year statute of limitations applicable to ERISA claims began to run either on March 13, 1985, when the defendants informed the plaintiff of the size of his benefit award under the *Miele I* settlement agreement, or, at the latest, on May 19, 1988, when the defendants sent a final detailed accounting of the benefits calculation to the plaintiff's counsel. *See* Def. Memo. of Law, 28–31. With regard to plaintiff's fiduciary duty claims, the defendants contend that the six-year statute of limitations also began to run on May 19, 1988, the date of the alleged breach. *See id.* at 32. Because, according to defendants, the plaintiff's time to file suit expired for both claims by 1994 at the latest, the plaintiff's claims filed on January 29, 1997 are time-barred.[4] *See id.* at 31–32.

Plaintiff responds to defendants' statute of limitations arguments with three different contentions: (1) with regard to the claim of miscalculation due to erroneously disregarded pension credits, plaintiff alleges that the statute did not begin to run until 1994 at the earliest,[5] when he discov-

---

3. To the extent that the defendants are arguing that the outcome of the "Merger Litigation" collaterally estops the plaintiff's current claims, *see* Def.Memo. of Law, 26, the defendants have not sufficiently identified what "issue[s] of fact or law [that were] actually litigated and decided" in those actions deserve preclusive effect. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir.1993). The defendants appear to argue that the issues actually litigated and decided are the effective date and terms of the merger agreement. However, this case addresses the terms and implementation of the settlement agreement, which was adopted years after the merger agreement. As will be discussed below, the court will not reach the merits of this case until after a hearing to determine whether the case is barred by the statute of limita-

tions. If the court does reach the merits of the case, the court would be willing to entertain a more detailed and comprehensible argument regarding what issues were actually litigated in the "Merger Litigation" and deserve preclusive effect in the instant case.

4. In their cross-motion for summary judgment, defendants made additional arguments dependent upon their contention that ERISA does not apply to the plaintiff's claims. *See* Def.Memo. of Law, 27. Since the court has already held that ERISA *does* apply, *see supra*, the court need not address these arguments.

5. In fact, plaintiff asserts that it was not until June 26, 1996 that defendants repudiated plaintiff's full claim of additional pension credits as a matter of right. *See* Pl. Reply Memo. of Law, 31.

ered that defendants had misrepresented the contents and effect of the applicable CBAs, *see* Pl.Memo. of Law, 31, (2) with regard to each claim of miscalculation, plaintiff alleges that the statute did not begin to run until defendants clearly repudiated each particular argument, *see id.* at 31–32; Pl. Reply Memo. of Law, 31–32, and (3) with regard to all of his claims, plaintiff alleges that a new statute of limitations begins to run upon each monthly payment of the miscalculated benefit and thus the plaintiff's action is timely with regard to future payments and past payments within six years of January 29, 1997. *See* Pl.Memo. of Law, 32–34. The plaintiff also argues that the statute of limitations should be tolled because the defendants misrepresented the terms of relevant CBAs that were unavailable to the plaintiff. *See id.* at 31 & n. 18; Pl.Supp.Memo., 5–6.

## 1 Non–Fiduciary Claims

### (a) Accrual of Claim and Commencement of Limitations Period

■ Count One and Count Three of plaintiff's complaint, brought under 29 U.S.C. § 1132(a)(1)(B) and 1132(a)(3), represent non-fiduciary claims, as does plaintiff's additional claim, raised in his motion for summary judgment, regarding the allegedly erroneous calculation of his benefits under the Merger Agreement rather than the Teamsters Plan.[6] Since ERISA does not provide a limitations period for non-fiduciary § 1132 claims, "the controlling limitations period is that specified in

the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983). The parties agree and the case law holds that the controlling limitations period is six years, as provided by New York C.P.L.R. § 213. *See* Pl.Memo. of Law, 28; Def.Memo. of Law, 28–29; *Miles,* 698 F.2d at 598; *Carollo v. Cement & Concrete Workers District Council Pension Plan,* 964 F.Supp. 677, 688–89 (E.D.N.Y.1997); *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund,* 975 F.Supp. 258, 264 (S.D.N.Y. 1997).

■ According to the Second Circuit, non-fiduciary ERISA claims accrue and the limitations period commences running "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." *Miles,* 698 F.2d at 598 (internal quotations omitted). Second Circuit courts have consistently held that an ERISA cause of action accrues and the limitation period begins to run when a claim for benefits is clearly and unequivocally denied.[7] *See id.* at 598; *Mitchell v. Shearson Lehman Brothers, Inc.,* 1997 WL 277381, at *2 (S.D.N.Y.1997); *Patterson–Priori v. Unum Life Insurance Co. of America,* 846 F.Supp. 1102, 1106 (E.D.N.Y.1994); *see also Kiefer v. Ceridian Corp.,* 976 F.Supp. 829, 842–43 (D.Minn.1997). The same accrual rule applies to claims, like Count Three, that challenge the terms and interpretation of ERISA plans under § 1132(a)(3). *See*

---

**6.** Count Three is clearly a non-fiduciary claim, not governed by ERISA's statute of limitations for actions involving breach of fiduciary duty. "A cause of action that does not allege a violation of a fiduciary duty ... is not governed by the limitations period contained in section 1113." *Myers v. King's Daughters Clinic,* 912 F.Supp. 233, 237 (W.D.Tex.), *aff'd,* 96 F.3d 1445 (5th Cir.1996); *see also Carollo v. Cement & Concrete Workers District Council Pension Plan,* 964 F.Supp. 677, 688–89 (E.D.N.Y.1997). In this case, not only does plaintiff not allege a breach of fiduciary duty in Count Three, *see* Compl., ¶ 55,

but the only breach of fiduciary duty identified by plaintiff is the alleged concealment and misrepresentation regarding the CBAs that is the basis for Count Two. *See* Pl.Supp. Memo., 4–5.

**7.** There is some disagreement within the circuit as to whether the claim accrues on the date of the initial denial of benefits or the date of the final denial of administrative appeal. *Compare Mitchell,* 1997 WL 277381, at *5 *with Patterson–Priori,* 846 F.Supp. at 1106–07.

*Carollo,* 964 F.Supp. at 689; *DeVito,* 975 F.Supp. at 264.

■ The defendants' first argument is that the plaintiff's non-fiduciary claims accrued and the limitations period began to run on March 13, 1985, when the plaintiff was informed of the calculation of his benefits under the *Miele I* settlement agreement. *Cf. Carollo,* 964 F.Supp. at 689 (positing that plaintiff's claims "accrued at the earliest on [the date] when the Board informed him" of the amount of his monthly pension). The bright-line rule urged by the defendants—that a miscalculation claim accrues on the date that a plaintiff is clearly and unequivocally informed of the amount of his benefit—has a certain logic and appeal. Such a rule would be easily enforced and would correspond directly to the aforementioned rule that a clear and unequivocal denial of benefits commences the statute of limitations period. However, because a miscalculation generally involves an award of benefits rather than a denial of benefits and thus is less likely to put a plaintiff on notice of a possible claim, at least one court has held that a miscalculation claim does not accrue until a plaintiff "inquire[s] about the amount of ... benefits and [is] told ... that those benefits [were] correctly computed...." *Kiefer,* 976 F.Supp. at 843; *see also Esden v. Retirement Plan of First Nat'l Bank of Boston,* 182 F.R.D. 432, 436–37 (D.Vt.1998) (statute began to run after defendant rejected plaintiff's claim of additional benefits); *cf. Larsen v. NMU Pension Trust,* 902 F.2d 1069, 1074 (2d Cir.1990) (positing that miscalculation claim accrued, at earliest, when claimant inquired regarding amount of benefits and was informed that benefits were correctly computed); *DeVito,* 975 F.Supp. at 264 ("[t]he earliest date on which Defendants could have rendered a 'clear repudiation' of Plaintiff's claim was ... when Defendant ... confirmed its calculation of Plaintiff's pension over her objection").

Applying the *Kiefer* formulation,[8] the court finds undisputed evidence that, between March 13, 1985 and October 25, 1988, plaintiff repeatedly inquired about the calculation and amount of his benefits and was repeatedly informed that the defendants believed the benefits to be correctly computed. *See* Pauk Affirm., Exhs. G1–G24. Moreover, plaintiff's counsel was clearly aware during that period of the possibility of bringing legal action under ERISA to correct any miscalculation. *See id.* at Exhs. G6, G19, & G21 (threatening filing of lawsuit under ERISA). Applying the rule adopted in *Kiefer,* the court agrees with the defendants' second argument that the plaintiff's miscalculation claims accrued when the defendants clearly and unequivocally rejected the plaintiff's miscalculation arguments; at the latest, that occurred on October 25, 1988, the final occasion on which the defendants informed the plaintiff that his benefits were correctly computed.[9] No reasonable finder of fact could examine the correspondence between the parties and find anything but that the defendants

---

8. It should be noted that one of the reasons for the *Kiefer* analysis—the lack of notice of a potential claim to a plaintiff who received benefits—is not particularly applicable to this case. At the time plaintiff was informed of the amount of his benefits, plaintiff had obtained the recalculation through litigation and settlement and was ably represented by counsel.

9. The court need not find that the plaintiff's objections to the alleged miscalculation constitute a formal claim nor that the defendants' rejection of those objections constitutes a formal claim denial to hold that the statute of limitations commenced running. Where a plaintiff objects to or inquires about the amount of benefits and receives a determination that his benefits were correctly computed, that plaintiff is clearly on notice of a possible miscalculation claim. In the instant case, it is even more clear that the plaintiff was on notice that he could remedy any miscalculation through an action under ERISA because the plaintiff obtained a recalculation of his benefits through litigation, was ably represented by counsel during his calculation inquiries, and received repeated explanations from the defendant as to the method of calculation.

were consistent, clear, and unequivocal in rejecting plaintiff's arguments and maintaining the accuracy of their own calculations.[10] *See* Pauk Affirm., Exhs. G1–G24.

In response, the plaintiff first argues that there was no clear repudiation between 1985 and 1988 of his current miscalculation claims because those *particular* claims were not presented to the defendants at that time. *See* Pl.Memo. of Law, 31–32; Pl. Reply Memo. of Law, 31–32. The court does not agree. Were courts to adopt this argument, plaintiffs would be free to file ERISA claims whenever they concocted novel legal theories, no matter how many years after benefits had been miscalculated and plaintiffs' complaints about miscalculation had been repudiated. While such a rule might prompt legal innovation, it would also undermine the very principle of finality for which statutes of limitations are maintained.

█ The plaintiff next argues that his cause of action is preserved by the continuing claims doctrine. According to the plaintiff, a new statute of limitations begins to run upon each monthly payment of the miscalculated benefit and thus the plaintiff's action is timely with regard to future payments and past payments within six years of January 29, 1997. In support of this argument, plaintiff relies primarily upon the Supreme Court's recent ruling in *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cali-*

*fornia, Inc.,* 522 U.S. 192, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). In *Bay Area Laundry,* the Court held that, under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"),[11] each missed penalty payment by an employer withdrawing from an underfunded multiemployer pension plan creates a separate cause of action with a separate limitations period. *See id.* at 546. The plaintiff argues by analogy that each alleged monthly underpayment of plaintiff's disability benefits creates a separate cause of action with a separate limitations period.[12] *See* Pl. Memo. of Law, 33.

However, plaintiff's analogy is logically infirm. The holding in *Bay Area Laundry* is predicated on the fact that "a pension plan cannot sue to recover [ ] withdrawal liability ... until the employer misses a particular payment...." *Bay Area Laundry,* 118 S.Ct at 552. Indeed, under the MPPAA, because a pension plan cannot assume that an employer will miss additional, future payments because of a single defaulted payment, no cause of action accrues to a pension plan with regard to a particular payment until that payment itself is missed. *See id.* The *Bay Area Laundry* decision is entirely logical: since the gravamen of a plaintiff pension plan's complaint is a non-payment, the plan has no cause of action regarding a particular payment until that payment is not made; as a result, the statute of limitations be-

---

**10.** The court need not and does not find that the defendants were clear and unequivocal in the *reasons* that they provided for rejecting plaintiff's arguments. What is important is that the *rejections* themselves were clear and unequivocal, even if the reasons therefore were rather murky. Because, as noted above, the statute of limitations in this case began to run without a formal claim by plaintiff and a formal claim denial by defendants, the court is not bound by regulations concerning the contents of formal ERISA claim denials.

**11.** Under the MPPAA, when an employer withdraws from an underfunded multiemployer pension plan, that employer incurs withdrawal liability. *See Bay Area Laundry,* 118 S.Ct. at 546. The employer's liability is

calculated by the plan's trustees, who set an installment schedule and demand payment as soon as practicable. *See id.* at 547. Even if the employer disputes the plan's calculation or schedule, the employer must make payments according to the plan's schedule "under the statute's 'pay now, dispute later' collection procedure." *Id.* If the employer fails to make the demanded payments, the plan may sue to collect the unpaid debt. *See id.* The plan has at least six years from the date on which the cause of action arose to sue the employer. *See id.;* 29 U.S.C. § 1451(f).

**12.** The plaintiff recognizes that the holding in *Bay Area Laundry* does not directly control cases involving ERISA benefit payments. *See* Pl.Memo. of Law, 33.

gins to run at the time of non-payment, when the cause of action accrues.

Conversely, in the instant case, the defendants informed the plaintiff of their calculation as to the amount of his monthly benefits on March 13, 1985. It was entirely clear to both parties that the defendants' calculation would apply to each and every monthly payment in perpetuity. *Cf. Ariadne Financial Services Pty., Ltd. v. United States*, 133 F.3d 874, 879 (Fed.Cir. 1998) ("There was a single repudiation by which the government made clear its intent to reject the terms of the contracts"). Unlike in *Bay Area Laundry*, the plaintiff's complaint in this case hinges not on each particular underpayment, but rather on the defendants' 1985 calculation. Again, unlike in *Bay Area Laundry* where the plaintiff could not bring suit regarding future non-payments after the first missed payment, in the instant case, as soon as a cause of action accrued with regard to the alleged miscalculation, the availability of relief clarifying plaintiff's rights to future benefits presented the plaintiff with the power to bring suit to foreclose all future underpayments. *See* 29 U.S.C. § 1132(a)(1)(B).

Indeed, the plaintiff's action is far more like a case involving the denial of ERISA benefits than it is like *Bay Area Laundry*. The plaintiff has not provided, and the court has been unable to locate, any cases allowing a denied claimant to evade the statute of limitations on his ERISA benefit denial because each month he erroneously receives no monthly payment. *See, e.g., Russell v. Board of Trustees of Firemen, Policemen, & Fire Alarm Operators' Pension Fund of Dallas, Texas*, 968 F.2d 489, 493 (5th Cir.1992) (rejecting argument that cause of action for denial of benefits accrues every month until payments restored). The two Second Circuit cases

that plaintiff does cite in support of his continuous claim theory, *Riley v. MEBA Pension Trust*, 570 F.2d 406, 411 (2d Cir. 1977), and *Fase v. Seafarers Welfare and Pension Plan*, 589 F.2d 112, 117 n. 6 (2d Cir.1979), do not provide compelling authority for his argument. In *Riley*, the Second Circuit held that, though a decision to *suspend* the plaintiff's benefits for taking another government job occurred prior to the enactment of ERISA, the monthly denials of benefits after ERISA's effective date due to the suspension were actionable because each denial constituted a "separate forfeiture and a separate wrong." *Riley*, 570 F.2d at 411. Importantly, though, the *Riley* Court differentiated the suspension at issue from an outright denial of benefits, expressly stating that an outright denial would not have resulted in continuing monthly claims. *See id.* The one-time calculation in the case at hand, the court believes, is more similar to a denial of benefits than an ongoing suspension.[13] Meanwhile, in *Fase*, the Second Circuit merely referenced the continuing claim theory in *dicta* in a footnote, but did not rely in any way upon that theory. *See Fase*, 589 F.2d at 116 n. 6.

The most analogous case offered by plaintiff is *Meagher v. Int'l Assoc. of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418 (9th Cir.1988), in which the Ninth Circuit held that a pension plan amendment which resulted in plaintiff receiving reduced benefits triggered new causes of action and thus new statutes of limitations "with the issuance of each check...." *Id.* at 1423. However, recent Ninth Circuit case law calls into question the viability of the continuing claims theory, *see Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1332 (9th Cir.1996) (rejecting continuing claim theo-

**13.** Even if that were not the case, the court would be reluctant to rely heavily on *Riley*, a case in which the Second Circuit candidly admitted that its holding resulted in large part from its concern that a contrary holding would prompt the plaintiff to quit his govern-

ment job, apply for the automatic resumption of pension benefits, then precipitate the issue again by resuming his job. *See Riley*, 570 F.2d at 411–12. No such concerns are at issue in the present case.

ry in ERISA case involving alleged miscalculation of benefits), and courts in other circuits, including this one, have rejected the *Meagher* approach. *See Int'l Union v. Murata Erie North Am., Inc.*, 980 F.2d 889, 899 (3d Cir.1992); *DeVito*, 975 F.Supp. at 266; *see also Larson v. Northrop Corp.*, 21 F.3d 1164, 1171 (D.C.Cir. 1994) (holding that alleged breach of fiduciary duty occurred when defendant entered annuity contract, not when plaintiff's benefits actually diminished by application of contract). As a result, the court does not attach much significance to the plaintiff's reliance on *Meagher*.

 But most importantly, the court does not believe that the continuing claims doctrine is applicable to facts of the instant case.[14] It is well-settled that the continuing claims doctrine does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time. *See Ariadne*, 133 F.3d at 879; *Brown Park Estates–Fairfield Development Co. v. United States*, 127 F.3d 1449, 1456 (Fed.Cir.1997); *cf. Russell*, 968 F.2d at 493 (continuing claim doctrine inapplicable if "original ... act ha[d] the degree of permanence that should trigger the claimant's awareness of and duty to assert her rights"). Rather, for the continuing claim doctrine to apply, the plaintiff's claims must be "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages."

*Brown Park*, 127 F.3d at 1456. As stated above, this court finds that the plaintiff's miscalculation claims are a direct result of the defendants' single alleged miscalculation; as a result, the court does not find plaintiff's monthly checks to be independent and distinct wrongs, but rather mere ill effects of the one-time calculation. *Cf. Russell*, 968 F.2d at 493 (holding that claim of discriminatory termination of benefits accrued on date of termination). Any holding to the contrary would defeat the purpose of the statute of limitations by subjecting pension plans to suits related to ancient claim denials or miscalculations and by requiring trustees to continually reexamine past benefits decisions.

In sum, because the true gravamen of plaintiff's complaint is the defendants' one-time calculation of plaintiff's benefits—and not each payment itself, the plaintiff could have brought a cause of action to foreclose *all* underpayments as soon as he was informed of the alleged miscalculation. As a result, the statute of limitations began to run as soon as the cause of action regarding the miscalculation accrued and not upon each underpayment. Since the court finds that the plaintiff's miscalculation claims accrued at the latest in October 1988, absent some tolling of the statute of limitations, the court must deem the plaintiff's non-fiduciary claims of miscalculation time-barred. Because the plaintiff makes no allegations that his claim of miscalculation due to the defendants' application of

14. The court has also considered, but found inapplicable to the plaintiff's miscalculation claims, case law applying a continuing violation theory in breach of fiduciary duty cases. In those cases, courts have held that causes of action for breach of fiduciary duty accrue each time a pension fund is injured as a result of unlawful investments or excessive benefit payments. *See Gruby v. Brady*, 838 F.Supp. 820, 831 (S.D.N.Y.1993); *Buccino v. Continental Assurance Co.*, 578 F.Supp. 1518, 1521 (S.D.N.Y.1983). As a result, in those cases, new statutes of limitations arose upon each imprudent or unlawful payment. *See Gruby*, 838 F.Supp. at 831; *Buccino*, 578 F.Supp. at 1521. In applying the continuous violation doctrine, the *Gruby* and *Buccino* courts relied

upon fiduciaries' "continuing obligation" to monitor their fund's financial condition and to avoid unlawful or imprudent investments. *See Gruby*, 838 F.Supp. at 831; *Buccino*, 578 F.Supp. at 1521. The court cannot find any case law suggesting that plan fiduciaries have a similar continuing obligation to continually reassess claim denials or benefit underpayments on a monthly basis. Nor does this court believe that such an obligation and the colossal attendant duties it would impose would promote "ERISA's basic goal of promoting the interests of employees and their beneficiaries in employee benefit plans." *Mertens v. Hewitt Associates*, 508 U.S. 248, 261, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

the Merger Agreement rather than the Teamsters Plan is subject to tolling, that claim must be dismissed as untimely.

(b) Equitable Tolling

The plaintiff does argue that the statute of limitations with regard to his miscalculation claims in Count One and Count Three of his complaint—that is, the miscalculation resulting from the defendants' disregard of additional contributions during plaintiff's workers' compensation period— did not begin to run until August 1994 when he became aware "that the Trustees had misrepresented his right to accrue additional [benefit credits] up to the date of his retirement...." Pl.Memo. of Law, 31. Moreover, the plaintiff contends, "[s]ince the delay in claiming such credits as of right was caused by the Trustees' misrepresentation regarding the applicable [CBAs], the [defendants] should not be allowed to gain by their own wrong...." *Id.* at 31 n. 18. In addition, in his supplementary brief, the plaintiff contends that the purpose of his inclusion of a fiduciary duty claim in Count Two was to obtain "tolling of the statute of limitations until his discovery of the CBAs." Pl.Supp. Memo., 5. Though the plaintiff did not expressly request equitable tolling in his original memorandum of law, *see id.* at 5 n. 2, the court will nonetheless address its availability.[15]

The Second Circuit has recently characterized the doctrine of equitable tolling as applicable " 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights....' " *Johnson v. Nyack Hospital,* 86 F.3d 8, 12 (2d Cir.1996) (quoting *Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 264 (2d Cir.1990)).

The doctrine was developed in large part "to address situations in which fraudulent or other conduct concealed the existence of a claim." *See Bowers,* 901 F.2d at 264. Equitable tolling has been applied "where affirmative misconduct on the part of the defendant may have lulled the plaintiff into inaction...." *South v. Saab Cars USA, Inc.,* 28 F.3d 9, 11 (2d Cir.1994).

As a general matter, the doctrine of equitable tolling is read into every federal statute of limitations, *see Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946), " 'unless Congress expressly provides to the contrary in clear and unambiguous language.' " *Pettola v. Nissan Motor Acceptance Corp.,* 1999 WL 221913, at *5 (D.Conn.1999) (quoting *Atlantic City Elec. Co. v. General Elec. Co.,* 312 F.2d 236, 239 (2d Cir.1962) (*en banc* )). Federal courts have recognized that the doctrine of equitable tolling is applicable in ERISA cases. *See, e.g., Connors v. Beth Energy Mines, Inc.,* 920 F.2d 205, 211 (3d Cir.1990); *Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 263 (2d Cir.1990); *cf. Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 875–878 (7th Cir.1997) (applying doctrines of equitable estoppel and waiver in ERISA case).

In order to obtain equitable tolling, the burden rests on the plaintiff to establish "circumstances warranting an extension of time." *Bowers,* 901 F.2d at 264. Where, as here, equitable tolling is sought on the basis of fraudulent concealment by defendants, the plaintiff generally must establish the following three elements: (1) fraudulent or deceptive conduct by defendants designed to conceal facts underlying the plaintiffs' cause of action, (2) unawareness of those facts on the part of the

---

**15.** As a result, the court rejects plaintiff's alternative tolling theory: that the court should recognize a separate breach of fiduciary duty claim that would trigger the fraud exception to the six-year statute of limitations imposed by 29 U.S.C. § 1113. *See* Pl.Supp.Memo., 6 n. 3. Because the pleading requirements of the fraud or concealment exception essential-

ly match those of the equitable tolling doctrine, *compare Losquadro v. FGH Realty Credit Corp.,* 959 F.Supp. 152, 157 (E.D.N.Y.1997) *with Hanley v. Orient Beach Club, Inc.,* 1998 WL 65990, at *4 (S.D.N.Y.1998), the court's decision to apply the equitable tolling doctrine will have no effect on the outcome of the statute of limitations question.

plaintiff, and (3) exercise of due diligence by the plaintiff in his efforts to uncover his claim. *See Hanley v. Orient Beach Club, Inc.,* 1998 WL 65990, at *4 (S.D.N.Y.1998); *Daly v. United Ass'n of Plumbers,* 1997 WL 566186, at *4 (S.D.N.Y.1997); *Campbell v. Chandler Assocs.,* 1997 WL 151889, at *2 (N.D.N.Y.1997); *Kolbeck v. LIT America, Inc.,* 923 F.Supp. 557, 565 (S.D.N.Y.1996).

In this case, the plaintiff has provided the court with the following facts to support an equitable tolling claim. After extensive correspondence between the parties regarding whether defendants had miscalculated plaintiff's benefit award by ignoring contributions made during plaintiff's workers' compensation period, *see* Pauk Affirm., Exhs. G1–G23, defendants' then-counsel Peter P. Paravati informed the plaintiff that the Fund adopted its position on such contributions from the Brewery CBAs. *See id.* at Exh. G–24. In his letter dated October 25, 1988, Paravati advised the plaintiff that "the Brewery [CBAs] did not provide for contributions during those particular[ ] instances." *See id.* According to plaintiff's verified complaint, plaintiff's counsel made "extended, but unsuccessful efforts" to obtain the relevant CBAs from various sources, including the defendants themselves. Compl., ¶ 35. However, because he allegedly "had no independent ability to verify Mr. Paravati's representations, and no reason to doubt their accuracy," plaintiff discontinued pursuit of his miscalculation claims. *See id.* It was only in 1994, when plaintiff's counsel unearthed the CBAs in question while litigating a different case, that plaintiff realized that he had been misled regarding the CBAs' terms. *See id.* at ¶ 36; Pauk Affirm, Exhs. H1–H2.

Where, as here, the plaintiff and the defendants are engaged in a fiduciary relationship, *see Varity Corp. v. Howe,* 516 U.S. 489, 496–98, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (discussing fiduciary duties owed by ERISA plan trustees to plan beneficiaries); 29 U.S.C. § 1104 (outlining trustees' fiduciary duties under ERISA), the complaining party can gain the benefit of equitable tolling " 'even absent an affirmative representation by the party under the fiduciary duty.' " *Lenz v. Associated Inns & Restaurants Co. of Am.,* 833 F.Supp. 362, 372 (S.D.N.Y. 1993) (quoting *Zola v. Gordon,* 685 F.Supp. 354, 364 (S.D.N.Y.1988)); *see Dymm v. Cahill,* 730 F.Supp. 1245, 1255 (S.D.N.Y. 1990).[16] Indeed, where such a relationship exists, " 'fraudulent concealment occurs if the party under the fiduciary duty fails to meet its obligation to inform [the other party] of facts underlying its claim.' " *Dymm,* 730 F.Supp. at 1256 (quoting *Zola,* 685 F.Supp. at 364). Applying these principles to the case at hand, the court finds that the defendants, in failing to meet their fiduciary obligation to inform the plaintiff of the true contents of the CBAs, sufficiently concealed the plaintiff's miscalculation claim to satisfy the first element of equitable tolling.

However, the court does not find the information submitted in plaintiff's papers to be sufficient to carry the burden of establishing the third element of equitable tolling. While the plaintiff has alleged "extended efforts" to locate the CBAs, he has provided the court with no specifics regarding those efforts nor any argument that those efforts constituted due diligence.[17] Moreover, the defendants have alleged that the plaintiffs "could have with due diligence obtained copies of the Brew-

---

**16.** Though, as noted above, the applicability of the doctrine of equitable tolling is a question of federal law, federal courts have repeatedly looked to state law to determine the level of misrepresentation required to trigger the doctrine. *See Connors,* 920 F.2d at 211; *Lenz,* 833 F.Supp. at 372; *Dymm,* 730 F.Supp. at 1255; *Zola,* 685 F.Supp. at 364.

**17.** In cases involving fiduciary relationships, courts have not allowed plaintiffs to avoid the burden of demonstrating that they exercised due diligence and reasonable care. *See Lenz,* 833 F.Supp. at 373; *Dymm,* 730 F.Supp. at 1256; *Zola,* 685 F.Supp. at 364.

ery Fund's Plan and collective bargaining agreements...." Def.Memo. of Law, 24 n. 3.

■■■ Though the court does not find sufficient undisputed facts to toll the statute of limitations, the court does find the plaintiff's allegations sufficient to raise material questions of fact regarding the availability of equitable tolling with regard to the plaintiff's claims of miscalculation due to the alleged disregard of contributions during plaintiff's workers' compensation period. As a result, with regard to those claims, the court will postpone its decision on the statute of limitations question pending an evidentiary hearing regarding whether the plaintiff acted with due diligence in his efforts to locate the CBAs.

## 2 Fiduciary Claim

While, in Count Two, the plaintiff has asserted that the defendants breached their fiduciary duty to the plaintiff by misrepresenting the terms of the CBAs, *see* Pl.Compl. ¶ 53, the plaintiff acknowledged that the sole relief sought under Count Two is a tolling of the statute of limitations. *See* Pl.Supp.Memo., 5. Since the court· has decided to grant the plaintiff equitable tolling if the plaintiff can demonstrate all the necessary elements, the plaintiff's second claim thus "serves no purpose and should be dismissed." *Id.* at 6. As a result, the court must dismiss Count Two of plaintiff's complaint.

## F *Varity* Preemption

In *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court held that an individual plan beneficiary can bring suit in her individual capacity under § 1132(a)(3) for "appropriate" equitable relief. *See id.* at 510, 116 S.Ct. 1065. However, the *Varity* Court emphasized that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no

need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515, 116 S.Ct. 1065. In applying the holding in *Varity,* lower courts have dismissed claims under § 1132(a)(3) where the relief sought by a plaintiff is specifically available under another of ERISA's enforcement provisions. *See Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 615 (6th Cir.1998); *Tolson v. Avondale Industries, Inc.,* 141 F.3d 604, 610 (5th Cir.1998); *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1475 (9th Cir. 1997); *Wald v. Southwestern Bell Corp. Customcare Medical Plan,* 83 F.3d 1002, 1006 (8th Cir.1996); *Dittman v. Dyno Nobel, Inc.,* 1998 WL 865603, at *8 (N.D.N.Y. 1998); *Greene v. Trans–General Life Insurance Co.,* .1998 WL 246637, at *2 (D.Conn.1998).

■■■ In this case, plaintiff brings two claims under § 1132(a)(3), Counts Two and Three of the complaint. For the reasons set forth above, Count Two must be dismissed. As a result, the only question posed in this case by *Varity* and its progeny is whether the relief sought by the plaintiff in Count Three is available under another of ERISA's enforcement provisions. In Count Three, plaintiff seeks declaratory and injunctive relief declaring that defendants' calculation formula violates the Plan and ERISA and requiring the defendants to recalculate the benefits of all similarly situated plan participants in accordance with the requirements of the Plan and ERISA. *See* Complaint, Prayer for Relief. Such relief is significantly different from the relief available under § 1132(a)(1)(B) or any other of ERISA's enforcement provisions available to the plaintiff. *See Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1197 (8th Cir.1998). As a result, Count Three of plaintiff's complaint is not preempted by *Varity* and its progeny.[18]

---

**18.** The court's holding regarding Count Three is limited to the finding that it is not preempted by *Varity.* The court states no position at this time on any other issue regarding the viability of Count Three.

G Arguments on the Merits

The court's decision on all other arguments is deferred pending the court's decision on the statute of limitations question. Were the court to find that equitable tolling does not apply, the court would not need to reach the merits of this case.

CONCLUSION

For the reasons set forth above, the court has subject matter jurisdiction to consider the plaintiff's claims. The court hereby dismisses plaintiff's fiduciary duty claim, Count Two of plaintiff's complaint. The court also dismisses plaintiff's claim, raised in his summary judgment motion, that his benefits were erroneously calculated under the Merger Agreement as barred by the statute of limitations. The court defers its decision regarding the timeliness of Count One and Count Three, plaintiff's claims of miscalculation of benefits due to defendants' disregard of contributions during workers' compensation periods, pending a hearing on equitable tolling. The court will set up a phone conference forthwith to schedule the hearing.

SO ORDERED.